UNITED STATES of America, Plaintiff-Appellee,

v.

Stephen A. PEARSON and John Petracelli, Defendants-Appellants.

No. 83–5161.

United States Court of Appeals, Eleventh Circuit.

Nov. 15, 1984.

---

**2.** At oral argument we were informed that some new evidence, not now in the record, will be offered at the trial on the merits.

Glass, Rastatter & Tarlowe, P.A., Stuart A. Tarlowe, Fort Lauderdale, Fla., for Pearson.

Neil H. Jaffee, Fort Lauderdale, Fla., for Petracelli.

Eileen M. O'Connor, Asst. U.S. Atty., Fort Lauderdale, Fla., Linda Collins Hertz, Asst. U.S. Atty., Chief, Appellate Div., Miami, Fla., for plaintiff-appellee.

Before HENDERSON and CLARK, Circuit Judges, and ATKINS *, District Judge

ATKINS, District Judge:

Appellants John Petracelli and Stephen A. Pearson were convicted of violating the federal firearms statutes, 26 U.S.C. §§ 5861(d), (i). Petracelli was charged with one count of possessing an unregistered silencer and with one count of possessing a silencer not identified by a serial number. Pearson was charged with one count of possessing an unregistered rifle, one count of possessing an unregistered silencer and one count of possessing a silencer not identified by a serial number. Appellants were convicted on all five counts and were sentenced to a concurrent term of nine years in prison on each of their individual counts.

In this appeal, John Petracelli asserts (1) that the evidence was insufficient to support a guilty verdict; (2) that the trial court erred in denying his motion to suppress physical evidence seized from his co-defendant's residence; and (3) that he was deprived of his right to a fair trial and to due process of law by the cumulative effect of errors committed by the trial court and prosecutorial misconduct at trial. Stephen Pearson contends (1) that the trial court abused its discretion in admitting prejudicial evidence of other weapons; (2) that the trial court erred in admitting prejudicial statements made without waiver of his *Miranda* rights; (3) that the trial court erred in not suppressing evidence that was seized in excess of the reasonable limitation of the search warrant and evidence that was seized in violation of 18 U.S.C. § 3109; and (4) that the trial court erred in failing to declare a mistrial or give a curative instruc-

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

tion when the prosecutor commented on Pearson's post-arrest silence. We affirm the convictions of Stephen Pearson and remand for a new trial as to John Petracelli.

## I. Background

Stephen Pearson and his wife owned and lived in a multi-story, four bedroom house in Margate, Florida. Pursuant to a valid warrant issued by a federal magistrate, federal, state, and local law enforcement agents conducted a search of that house on September 10, 1982. The warrant authorized the seizure of "firearms, pistols, revolvers, long guns, silencers, receipts, ammunition, ammunition clips, spare parts, holsters for said firearms and photographs of [persons] in possession of firearms." During the search, the agents seized a large number of firearms, many of which were not illegal and many items that were in plain view but not authorized by the warrant.

The unregistered silencer that Petracelli was convicted of possessing was found in the downstairs bedroom/den of the Pearson home. Also found in this room were a loaded, Colt .45 Commander pistol with attached thread protector, a .25 Raven pistol belonging to Donna Elmore, another resident of the house, a .357 Magnum Colt and a pair of prescription glasses and travel bag belonging to Petracelli.

The unregistered rifle and silencer that Pearson was convicted of possessing were seized from a large closet in the upstairs office that adjoined the master bedroom shared by Pearson and his wife. In a post-arrest statement, Pearson indicated that he used the office to conduct his small airplane charter business and that no one, other than he and his wife, was permitted to enter the office or bedroom. The agents also seized from the upstairs closet and master bedroom a large number of weapons, weapons parts, clips and ammunition, all properly registered and bearing serial numbers.

Both defendants were charged with additional counts that were either dismissed prior to trial or severed. Pearson and Petracelli each filed a pretrial motion requesting a severance of those counts (V and XIII) that charged them with possessing a firearm after having been convicted of a felony. They argued that since these counts required proof of a prior conviction and the remaining counts did not, it would be highly prejudicial to try everything together in one proceeding. The trial court agreed and severed Counts V and XIII at the time of trial, subsequent to jury selection. The Court also heard and denied motions filed by both appellants to suppress physical evidence and a motion to suppress Pearson's post-arrest statement.

## II. Appellants' Claims

### A. Reasonableness of the Search and Seizure

### 1. Search and Seizure Exceeded the Scope of the Search Warrant

Petracelli and Pearson both argue that the search of Pearson's residence and the seizure of the firearms that appellants were convicted of possessing were illegal because of the flagrant disregard by the executing officers for the limitations in the search warrant. They argue that the seizure of such items as drug paraphernalia, portable landing lights, aviation maps, bills for airplane repairs, aircraft flares, marijuana, cocaine and scales, so far exceeds the scope of the search warrant that all items seized pursuant to the warrant should have been suppressed. The district court correctly denied this motion. In *United States v. Diecidue*, 603 F.2d 535, 561 (5th Cir.1979) the court was similarly asked to suppress the fruits of the entire search because some of the items had been improperly seized. The Court stated that since none of the improperly seized items had been introduced into evidence, the issue was moot. Here, the trial judge expressly found that the unauthorized items were not improperly seized because they were found in plain view in the course of the authorized search. He did, however, exclude their introduction at trial on the basis of irrelevancy.

This is not a case, as in *United States v. Rettig*, 589 F.2d 418 (9th Cir.1978), on which appellants reply, where the agents obtained a warrant to search for evidence of one crime, came across evidence of a second crime and then charged only as to that second offense. Here, the officers got a warrant to search for firearms and in the course of that search found evidence suggesting the existence of a drug operation. Appellants, however, were charged only with the firearms offenses, not with drug violations. Under these circumstances, we find no basis for excluding the legally seized items resulting from a search conducted under a valid warrant.

### 2. Failure to Fully Comply with 18 U.S.C. § 3109

Appellant Pearson argues that the trial court should have suppressed the evidence for failure of the agents to fully comply with 18 U.S.C. § 3109, which states:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The record indicates that the agents did knock and announce both their identities and the fact that they had a search warrant. The issue, then, is whether they waited for a response before opening the unlocked door and entering the premises. The record is silent on this point. Even if, as appellant argues, they announced themselves and simultaneously opened the door, that action would not be found unreasonable under the exigent circumstances that exist here.

Although the agents had already encountered Pearson on his front lawn, they had reason to believe that Petracelli was armed and inside the house. They knew that both appellants had prior felony convictions and that there was good reason to believe the house contained an enormous cache of firearms, including machine guns and subma-

chine guns, and any number of persons. The agents knew they were walking into a dangerous situation that could quickly get out of control. Under these circumstances, even if the agents had *not* "knocked and announced," the entry would not have been invalid. *United States v. Kane*, 637 F.2d 974, 979 (3d Cir.1981); *United States v. Garcia Mendez*, 437 F.2d 85, 86 (5th Cir. 1971). Accordingly, we find that exigent circumstances existed excusing any failure of the agents to wait for a response after they "knocked and announced."

### B. Waiver of *Miranda* Rights

Pearson's next argument is that the trial court erred in denying his motion to suppress statements on the ground that his right to remain silent and his right not to be questioned without an attorney present were violated by Agent Keilitz's interrogation. The government contends that Pearson never requested an attorney and that even if he did, he initiated the conversation with Keilitz thus waiving his *Miranda* rights.

At the time of his arrest at 8:50 p.m. on September 10, 1982, Pearson was advised of his constitutional rights by Special Agent Henderson who read from a card issued by the Bureau of Alcohol, Tobacco and Firearms. Pearson indicated that he understood his rights and that he did not wish to waive them. Henderson testified that Pearson did not request an attorney.

Shortly after his arrest, Pearson, accompanied by Agent Keilitz and Special Agent John Hilton, was taken by car from his home to the Bureau for processing. During the course of this ride, Pearson questioned Agent Keilitz about the execution of the warrant. He wanted to know what items had been seized and specifically requested information regarding the firearms. At the time Pearson initiated this conversation, Keilitz asked him if he had been advised of his constitutional rights, to which Pearson responded that he had. The agent then restated to Pearson that if he couldn't afford an attorney, one would be appointed. After this exchange, Agent

Keilitz asked Pearson a number of questions, some of which Pearson elected to answer and some of which he did not.

The District Court denied the motion to suppress but made no findings. Inherent in the denial of this motion, however, is the finding that the statements were made voluntarily. *Palmes v. Wainwright*, 725 F.2d 1511, 1517–1518 (11th Cir. 1984). Not so clear is whether the trial court found that the appellant had requested an attorney. Although appellant states that he made the request during the ride, there is nothing else in the record that supports this contention. In fact, there was testimony from Agent Henderson that Pearson did not assert his right to counsel when initially given the *Miranda* warnings. There also was no mention of appellant requesting an attorney in the report Agent Keilitz made recounting the events that took place in the car. It appears to be a question of credibility that the trial judge decided in favor of the government. We find nothing to suggest that such a finding would be an abuse of discretion. Even if Pearson had requested an attorney, there is no clear error in the court's ruling.

Once an accused has asserted his right to counsel, any interrogation must cease. *United States v. Miranda*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). The accused, however, must actually articulate his request for an attorney, *Id.* at 474, 86 S.Ct. at 1628. *See also Michigan v. Mosley*, 423 U.S. 96, 104, n. 10, 96 S.Ct. 321, 326, n. 10, 46 L.Ed.2d 313 (1975). After the accused has invoked his right to an attorney, he cannot be subjected to further questioning without the presence of his attorney, unless he makes a voluntary, knowing and intelligent waiver of his rights.

When considering whether a valid waiver has been effected, the Court will look to the totality of the circumstances. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *Palmes v. Wainwright*, 725 F.2d 1511, 1516 (11th Cir.1984). A review of the record indicates that the appellant was made aware of his constitutional rights on two separate occasions within the space of approximately two hours. Each time, he acknowledged that he understood his rights. At the suppression hearing appellant testified that he had selectively refused to answer a number of the questions asked by Agent Keilitz and acknowledged that such a refusal indicated that he understood his rights. Further, the record shows that the appellant initiated a generalized discussion with Agent Keilitz relating both directly and indirectly to the investigation. *See Edwards*, 451 U.S. at 484–485, 101 S.Ct. at 1884–1885. It was this discussion that prompted Agent Keilitz to once again remind appellant of his right to have an attorney present. Appellant, however, chose to continue the discussion without the benefit of a lawyer. Therefore, even if appellant had requested an attorney, the record would support the finding of a valid waiver. The district court did not err in refusing to suppress the statements.

### C. Sufficiency of Evidence.

Appellant Petracelli argues that the evidence was insufficient to support a guilty verdict. The charge against Petracelli was that he had actual, not constructive, possession of an unregistered silencer that was not identified by a serial number. The government, therefore, had to prove that Petracelli knowingly had immediate control or possession of the silencer. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973).

When testing the sufficiency of the evidence, the court must sustain the jury verdict "if there is substantial evidence, taking the view most favorable to the government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The former Fifth Circuit held that

[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with

every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

 The government's evidence showed that Petracelli was in the house when the silencer was seized, that he was the current occupant of the bedroom where the silencer was found, as evidenced by testimony and the discovery of his glasses and travel bag in that room, that the silencer fit his gun and that he had been observed in possession of the silencer attached to his gun. Although there was substantial conflicting defense testimony, all conflicts in the evidence must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses. *United States v. Rodriquez,* 654 F.2d 315, 317 (5th Cir.1981). In viewing the evidence in the light most favorable to the government and in accepting those credibility choices that support the verdict, we conclude that there was sufficient evidence to find that Petracelli was in actual possession of the silencer.

### D. Appellant's Post Arrest Silence

 Pearson argues that the prosecutor improperly used appellant's post-arrest silence against him by asking Agent Henderson on direct examination whether he had an opportunity to give Pearson his *Miranda* rights. This argument is without merit. Pearson did not remain silent but made post-arrest statements that were admitted into evidence. Even if Pearson had not made a statement, the prosecutor's question was much too indirect for it to be deemed an impermissible comment on appellant's right to remain silent. *See United States v. Vera,* 701 F.2d 1349, 1362 (11th Cir.1983); *United States v. Dearden,* 546 F.2d 622, 625 (5th Cir.), *cert. denied*

434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977).

### E. Fair Trial

Petracelli argues that the conduct of both the trial judge and the prosecutor prevented him from receiving a fair trial as guaranteed by the Constitution. Pearson makes this same argument with regard only to the trial judge.

### 1. Conduct of the Trial Judge

#### a. Prejudicial effect of voir dire question

As discussed above, Petracelli was originally also charged with one count of possessing a firearm after having been convicted of a felony. A motion was filed several weeks before trial, in which it was requested that the felon in possession count be severed due to the prejudicial spill-over effect on the other counts. The court had not ruled by the time Petracelli's proposed voir dire questions were due. Not knowing whether the motion to sever would be granted, the defense requested that during voir dire the trial court ask the prospective jurors whether the fact that Petracelli had been previously convicted of a felony would make it difficult for anyone to be fair and impartial. The trial court so inquired, and then just prior to trial severed the felon in possession count.

 At that time Petracelli moved for a mistrial on the ground that it was highly prejudicial and irrelevant for the jury to have been informed of his prior conviction. This motion was denied. The court also rejected the prosecutor's recommendation to sever Petracelli from the trial of his co-defendant, deciding instead to remedy the situation by giving a curative instruction. Defense counsel was in agreement and even suggested the wording and tone that might be used. Our review of the record, however, indicates that no curative instruction was ever given.

### b. Admission of Evidence

During the course of searching Pearson's residence, agents found a large number of legal guns, that is, guns both registered and bearing serial numbers. The court admitted some twenty-two of these shotguns, rifles and hand guns into evidence. The guns were placed on a table in front of the jury where they remained throughout the five-day trial.

The court admitted these firearms under FRE 404(b) as extrinsic evidence of similar acts showing intent and knowledge of the firearms statute. Tr 676. A violation of the firearms statute, however, does not require the element of specific intent. *United States v. Freed,* 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). Nor is it necessary to show knowledge of non-registration, *United States v. Sorrells,* 714 F.2d 1522, 1531 (11th Cir.1983); *United States v. Moschetta,* 673 F.2d 96, 100 (5th Cir.1982), or knowledge of registration requirements, *United States v. Sedigh,* 658 F.2d 1010, 1012 (5th Cir.1981) *cert. denied* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982). It is only necessary to show that the defendant possessed what he knew to be a firearm. 401 U.S. at 607, 91 S.Ct. at 1117; 714 F.2d at 1532. Similarly, intent and knowledge also are not elements of the other offense charged against the defendants, possession of a firearm not identified by a serial number.

Although on the record, the trial judge admitted the guns as similar acts showing intent and knowledge of the firearms statutes, his ultimate instruction to the jury was that the extrinsic evidence "constitute[d] evidence of similar acts from which knowledge by a defendant of the presence or possession of weapons may be inferred." R 293. It appears that the court changed its reasoning and admitted the evidence as relevant to proving that the appellants knowingly possessed the firearms.

Extrinsic evidence may be admitted under FRE 404(b) after employing the following two step analysis outlined in *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) and followed in this circuit: "First it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403." *Id.* at 911. The considerations found in Rule 403 include confusion of the issues, misleading the jury, undue delay and waste of time or needless presentation of cumulative evidence. *See also United States v. Dothard,* 666 F.2d 498, 501 (11th Cir.1982). The trial judge made no *Beechum* analysis on the record.

Most of the guns constituting the extrinsic evidence were found either in Pearson's upstairs office closet or in his master bedroom. By his own statement he and his wife were the only persons who occupied those rooms. Although the record is not clear as to the government's basis for introducing these guns or as to the Court's basis for admitting them, it appears that the guns found in the closet and bedroom were relevant to show knowledge, an element of actual possession. It was contended that the defendant could not have had that many guns stored in this private area without knowing of their existence, legal and illegal guns alike. Since the very number of guns makes this point, it would not have been an abuse of discretion for the trial judge to have found that the probative value of admitting the guns against Pearson outweighed any prejudicial effect.

The effect upon Petracelli, however, was quite different. Although two of the admitted firearms were found in the bedroom occupied by Petracelli, there was no testimony that he had access to or had ever occupied the upstairs area where most of the guns were found. In fact, the evidence was to the contrary. Furthermore, the court gave no instruction limiting the extrinsic evidence against Petracelli to the two guns found in his bedroom. While we can find no abuse of discretion in admitting

the firearms against Pearson, their admission against Petracelli was irrelevant and prejudicial.

### 2. Conduct of the Prosecutor

Petracelli also contends that prosecutorial conduct deprived him of a fair trial. Although several claims of misconduct were raised on this appeal, the most meritorious claim involves the following comment made by the prosecutor in her closing argument:

> ... [Y]ou may say to yourself, "Why is somebody using a false name on an airline ticket? ... Gee whiz, why does Mr. Petracelli have a silencer and gun"? Does it sound to you like he was afraid? You saw him sitting there in the trial. Did you see his leg going up and down? He is nervous. (Appellant's objection overruled) You saw how nervous he was sitting there. Do you think he is afraid? Tr. Vol. 10 at 145–146.

Petracelli argues that the prosecutor's remarks constituted an indirect comment on his failure to testify at trial, introduced character evidence for the sole purpose of proving guilt, and violated his right not to be convicted except on the basis of the evidence admitted at trial. We agree.

As stated by the former Fifth Circuit, the "sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence." *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir.1981). Furthermore, it is the well-settled law of this circuit that "a prosecutor may not seek to obtain a conviction by going beyond the evidence before the jury." *United States v. Vera*, 701 F.2d 1349, 1361 (11th Cir.1983). It is also clear that the defendant's behavior off the witness stand in this instance was not evidence subject to comment. *United States v. Wright*, 489 F.2d 1181 (D.C.Cir.1973). In overruling Petracelli's objection and in failing to give a curative instruction, the court, in effect, gave the jury an incorrect impression that appellant's behavior off the witness stand was evidence in this instance,

upon which the prosecutor was free to comment.

Even if we were to find any of the above errors, standing alone, to be harmless, their cumulative effect, especially in light of the relative strength of Petracelli's possession defense, was clearly prejudicial and combined to deprive Petracelli of a fair trial.

AFFIRMED as to Pearson, REVERSED and REMANDED as to Petracelli.