**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Anselmo IGLESIAS,**
**Defendant–Appellant.**

**No. 89–5559.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 31, 1990.

Jon May, Miami, Fla., for Iglesias.

Dexter W. Lehtinen, U.S. Atty., Linda C. Hertz, Carol E. Herman, Alan B. Kaiser, Asst. U.S. Attys., Miami, Fla., for the U.S.

Before JOHNSON and HATCHETT, Circuit Judges, and SMITH *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case arises on appeal from the defendant's conviction for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C.A. § 846 and possession of cocaine with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1).

## I.   FACTS

### A.   Background

On September 14, 1988, the Customs Service received an anonymous tip that a suspicious vessel was at the Tortola Marina in Upper Key Largo. A Customs agent went

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designa-

tion.

to the marina and saw the WHAT'S UP, a white Bertram Sportfisherman ("the boat"), docked by the seawall. Agent Richard Johnson surveyed the scene and observed a pick-up truck drive by the boat several times. The driver of the pick-up, Sisinio Torres, was accompanied by another man. Torres left the marina and returned ten or fifteen minutes later. He left and returned once more before finally leaving for the day.

When Customs agents returned to the boat the next day, they found that it had been placed in dry dock. Customs agents watched a grey Buick drive past the boat three times. On the third pass, the Buick drove up to the surveillance car and the driver, Blas Duran, asked the Customs agent, Deborah Keuthan, for directions to Caloosa Cove Marina, which was thirty-five miles away.

The agents decided to search the boat. They found that the inside was orderly, but noticed that the wall panels were bulging. Behind the panels they found several kilogram-sized packages of cocaine. The agents did not take the cocaine, but continued their surveillance.

Some time later, the agents observed a blue Jeep with a grey top pull up to the rear of the boat. Two men got out of the Jeep. One of them, Harold Garcia, began to remove the boat's propellers. A few hours later, the Jeep left. An agent followed the Jeep for almost an hour, but stopped following when Garcia began making erratic maneuvers.

On September 16, 1988, Garcia returned in a blue and white Buick with another man, Rolando Alvarez. They continued working on the propellers and made several trips back and forth from the marina. After one trip, Garcia opened the trunk of the blue and white Buick. He took a package that appeared to be burlap sacks and handed it to Alvarez, who was on the boat. A short time later, a tan Nissan arrived at the scene. The car contained two men, Torres and Antonio Rodriguez. They walked over to the blue and white Buick, removed items from its open trunk, placed the items in the Nissan's trunk, and left. A few minutes later, Garcia and Alvarez left.

That afternoon, Iglesias arrived at the marina in the grey Buick. There were two passengers with him. Iglesias got out of the car holding something in his hand.[1] He walked up to the boat, knocked, and stepped back to wait. After a few minutes, Garcia arrived in the blue and white Buick. Garcia got out of the car and walked up to Iglesias, who handed Garcia the item that he had in his hand. During this time, Iglesias's passengers were "rubbernecking," looking to the right and then turning their heads all the way to the left. Iglesias then left in the grey Buick, and Garcia left in the blue and white Buick. After a short period, Agent David Robinson observed Iglesias return to the boat in the grey Buick with Duran and Torres. When they left a short time later, Iglesias was driving.

That afternoon, agents followed the grey Buick to the Waldorf Shopping Plaza, where they saw the Nissan. Torres and Rodriguez removed some things from the trunk of the Buick and placed them in the back seat of the Nissan. At another point during that afternoon, the agents observed the grey Buick in the Waldorf Shopping Plaza parking lot, with Iglesias, Perez and Duran riding in it.

At one point during the day, Garcia and Alvarez boarded the boat and began working inside. Early the next morning, the Customs agents conducted a second search and found the inside in disarray.[2] They

---

1. Keuthan was observing the scene. She testified about the object as follows:

    [Iglesias] was holding a package or something in his hand. I could not identify it. He had something in his hand.

          \*     \*     \*     \*     \*     \*

    It was white or a very light color.

2. The benches, counters, and sink were detached from the sides of the cabin and scattered about the interior. Some of the paneling had been pulled off the sides of the cabin.

also found several white burlap sacks containing packages of cocaine. The agents took one package, and continued their surveillance. Some time later, Garcia, Alvarez, Rodriguez, and Fajardo arrived at the boat. Alvarez arrived in a Pontiac. Garcia took some burlap sacks from the trunk of the Pontiac and gave them to Rodriguez, who handed them to Alvarez and Fajardo on the boat. The Customs agents arrested the four at that time and arrested Duran and Torres when they arrived in the grey Buick a short time later. The agents recovered approximately 521 kilograms of cocaine from the boat. Many of the kilograms were wrapped in white burlap sacks.

Iglesias arrived at the marina a short time later in the tan Nissan along with Albaro Perez. They drove slowly past the boat, which had several unmarked police cars in front of it, to a restaurant at the end of the marina. They spent about an hour having lunch, and drove out of the marina past the roadblock. The police arrested them a short time later. Iglesias had $108.66 on his person. Searching the Nissan, the police found no contraband.

### B. Proceedings in the District Court

A grand jury indicted Iglesias, Rodriguez, Garcia, Alvarez, Torres, Duran, Perez, and Fajardo on two counts: conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C.A. § 846, and possession of cocaine with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1). The charges against Perez were dismissed prior to trial. The district court held a jury trial on December 12 through 17, 1988. During the trial, Rodriguez and Fajardo pleaded guilty. The jury convicted Iglesias, Torres, Garcia and Alvarez of both counts.[3]

In closing argument, the prosecutor misstated Keuthan's testimony about the item that Iglesias gave to Garcia. Iglesias's attorney objected, but the court overruled the objection, instructing the jury to accept or reject the prosecutor's recollection of the testimony based on their own recollections. In this appeal, we first consider whether the evidence against Iglesias was insuffi-

cient to support his conviction. We then consider whether the prosecutor's closing argument was prejudicial error.

## II. ANALYSIS

### A. Insufficiency of the Evidence

■ When considering whether a conviction rests on insufficient evidence, this Court must review the evidence in the light most favorable to the government and ask whether any reasonable jury could find proof beyond a reasonable doubt. *United States v. Lopez*, 898 F.2d 1505, 1509 (11th Cir.1990). The evidence is sufficient even if it does not exclude every reasonable hypothesis of innocence. *Id.*

■ In order to obtain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that a conspiracy to possess cocaine with intent to distribute existed between two or more persons, that the accused knew of the conspiracy, and that the accused, with this knowledge, voluntarily became a part of the conspiracy. *United States v. Weaver*, 905 F.2d 1466, 1479 (11th Cir.1990). " 'Close association with a co-conspirator or mere presence at the scene of the crime is insufficient evidence of knowing participation in a conspiracy. However, direct evidence of the elements of a conspiracy is not required.' " *Id.* (quoting *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983)). Presence is a material and probative factor that the jury may consider in reaching its verdict. *United States v. Bain*, 736 F.2d 1480, 1485 (11th Cir.1984). The government may prove that a defendant knowingly participated in a conspiracy through proof of surrounding circumstances such as acts committed by the defendant that furthered the purpose of the conspiracy. *Id.*

■ In order to prove possession with intent to distribute, the government must demonstrate beyond a reasonable doubt that the defendant knowingly possessed cocaine and that he intended to distribute it. *United States v. Cruz–Valdez*, 773 F.2d

---

**3.** Duran fled during the trial, and the police captured him sometime later.

1541, 1544 (11th Cir.1985) (en banc); 21 U.S.C.A. § 841(a). Possession can be either actual or constructive and can be either joint or sole. *United States v. Crawford*, 906 F.2d 1531, 1534 (11th Cir.1990). In order to establish constructive possession, the government may show ownership, dominion, or control over the contraband itself, or the premises or vehicle in which contraband is concealed. *Id.; United States v. Smith*, 591 F.2d 1105, 1107 (5th Cir.1979); *United States v. Bascaro*, 742 F.2d 1335, 1363 (11th Cir.1984) (constructive possession consists of the knowing exercise or the knowing power to exercise dominion and control over the substance). Intent to distribute may be inferred from the quantity of cocaine seized. *United States v. Montes–Cardenas*, 746 F.2d 771, 778–79 (11th Cir.1984).

■ In the present case, there is ample evidence supporting Iglesias's conviction. Taken in the light most favorable to the government, the evidence establishes beyond a reasonable doubt that Iglesias knew of the conspiracy or that, with knowledge, he voluntarily joined the conspiracy. Iglesias's actions in driving with other members of the conspiracy in the grey Buick show a purposeful association with the conspiracy. The jury reasonably could have found that these were acts in furtherance of the conspiracy demonstrating Iglesias's voluntary participation in the conspiracy. This conclusion has further support in the evidence that Iglesias's passengers were engaged in countersurveillance (rubbernecking) as Iglesias spoke with Garcia on September 16, 1988.

The government also argues that Iglesias's handing something to Garcia was an act in furtherance of the conspiracy.

While Keuthan testified that she could not identify the object, the jury reasonably could have found that the white object was a package of the white burlap sacks in which the agents found the cocaine. Thus, the jury could have concluded that this was an act in furtherance of the conspiracy.[4]

■ The evidence also supports Iglesias's conviction of possession with intent to distribute on an aiding and abetting theory. One who has been indicted as a principal may be convicted on evidence showing only that he aided and abetted the offense. *Bascaro*, 742 F.2d at 1364; *United States v. Oquendo*, 505 F.2d 1307, 1310 n. 1 (5th Cir.1975). In order to prove aiding and abetting in violation of 18 U.S.C.A. § 2, the government must prove that the defendant in some way associated himself with the venture, that he participated in it as something that he wished to bring about, and that he sought by his actions to make it succeed. *Bascaro*, 742 F.2d at 1364; *United States v. Long*, 674 F.2d 848, 854 (11th Cir.1982).

Iglesias drove his co-conspirators to and from the boat, which the jury could have construed as assisting the co-conspirators in their efforts to remove the cocaine from the boat. This evidence was sufficient to support a conviction on an aiding and abetting theory of liability. Accordingly, Iglesias's argument that his convictions rest on insufficient evidence lacks merit.

### B. *Improper Argument*

■ During closing argument, the prosecutor made the following statement:

We have a new individual who comes to the boat on September 16. Mr. Iglesias arrives in a gray Buick and walks out of that vehicle up to the boat.

---

**4.** The government also argues that Iglesias must have been a member of the conspiracy because the others allowed him to approach the boat, which contained almost $100 million worth of cocaine. This theory assumes that a drug smuggler would not allow anyone but a co-conspirator to approach a multi-million dollar cache of drugs. *See United States v. Quintero*, 848 F.2d 154, 156 (11th Cir.1988) (per curiam) (evidence sufficient where defendant drove van containing 415.5 kilograms of cocaine); *Cruz–Valdez*, 773 F.2d at 1547 (where defendant was one of four men on 68 foot ship with 220 bales of marijuana, the evidence was sufficient). The present case is distinguishable from *Cruz–Valdez* because Keuthan testified that there was nobody guarding the boat when Iglesias approached it and knocked. Anyone could have approached the boat at that time without being stopped. Garcia's calm demeanor, however, when he approached Iglesias, who was standing near the boat, could have indicated to the jury that Iglesias was a member of the conspiracy.

And you heard the testimony that he was carrying an item in his hand. And Agent Keuthan was shown one of the burlap sacks, the white colored burlap. And she said that that could have been what he was carrying.

There had been no such colloquy between the prosecutor and Keuthan. Iglesias's counsel objected that Keuthan did not give this testimony. The court stated:

Well, he can argue it. And I don't frankly recall. I don't know what we are going to do except let the jury remember it.

Ladies and gentlemen of the jury, from time to time the lawyers will have different memories of what a witness said. They are both going to give you their best memory of it and you folks will just have to rely on your collective memories of what the witness said.

If the lawyer's statement is accurate, then, fine. You accept it. If it is not, then you reject it.

The sole purpose of closing argument is to assist the jury in analyzing the evidence. *United States v. Pearson,* 746 F.2d 787, 796 (11th Cir.1984). A prosecutor may not go beyond the evidence before the jury during closing argument. *Id.* In order for a claim of prosecutorial misconduct during closing argument to warrant reversal, however, the argument must be improper and prejudicial to a substantial right of the defendant. *Bascaro,* 742 F.2d at 1353. A prejudicial remark may be rendered harmless by a curative instruction. *United States v. Reed,* 887 F.2d 1398, 1402 (11th Cir.1989).

In the present case, the prosecutor went beyond the evidence in his argument to the jury. It is apparent, however, that any prejudice was cured by the court's instruction to the jury that it should rely on its own recollection rather than the recollections of the attorneys. Accordingly, Iglesias's argument lacks merit.

## III. CONCLUSION

We AFFIRM Iglesias's convictions.

HATCHETT, Circuit Judge, dissenting in part:

Because I am not persuaded that a reasonable jury could have found Iglesias guilty beyond a reasonable doubt, I respectfully dissent from that portion of the majority opinion which finds the evidence sufficient. *United States v. Lopez,* 898 F.2d 1505, 1509 (11th Cir.1990). The only colorable evidence the government offered against Iglesias was the testimony of Agent Keuthan that Iglesias handed a "package or something" to Garcia. Significantly, however, Agent Keuthan admitted that she "could not identify it." The majority correctly notes that " '[c]lose association with a co-conspirator or mere presence at the scene of the crime is insufficient evidence of knowing participation in a conspiracy.' " *United States v. Weaver,* 905 F.2d 1466, 1479 (11th Cir.1990) (quoting *United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983)). At best, the government's evidence merely showed that Iglesias associated with some of the persons later indicted.

Further, not only did the government offer insufficient evidence against Iglesias, but the prosecutor, during closing argument, inaccurately summarized the evidence against Iglesias. No testimony supports the prosecutor's statement that Agent Keuthan testified that Iglesias could have been carrying one of the white burlap sacks containing cocaine. The prosecution's misstatement of fact regarding the only colorable evidence of guilt presented against Iglesias provides even more reason to conclude that the jury's verdict is unreasonable.