67 F.3d 310
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clint E. WATERS, Defendant-Appellant.
 No. 94-10555.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 11, 1995.*
Decided Sept. 13, 1995.
 
 1
 Before: BEEZER and THOMPSON, Circuit Judges, and QUACKENBUSH, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Clint E. Waters appeals his convictions on four counts of wilfully concealing a material fact by trick, scheme, or device, in violation of 18 U.S.C. Sec. 1001. We have jurisdiction over Waters's appeal pursuant to 28 U.S.C. Sec. 1291, and we AFFIRM.
 
 
 4
 On January 11, 1994, Waters was charged in a four-count Indictment with wilfully concealing a material fact by trick, scheme, or device, from an agency of the United States, in violation of 18 U.S.C. Sec. 1001. Specifically, in each of the four counts, the Indictment alleged that Waters, a real estate sales agent, had wilfully falsified, concealed and covered up by trick, scheme [or] device from the Department of Veteran's Affairs ("VA") material facts relating to various buyers' qualifications to purchase four separate real estate parcels belonging to the VA. The case proceeded to trial on August 8, 1994, and the jury returned a verdict of guilty to each of the four counts on August 12, 1994.
 
 
 5
 On appeal, Waters contends his convictions were in error because there was insufficient evidence to support the findings of guilt.
 
 
 6
 In support of each of the four counts of the Indictment, the Government presented the following evidence.
 
 1. The Secretariat Property
 
 7
 The Government introduced documents from the official VA file pertaining to 1708 East Secretariat, establishing that on May 24, 1990, Cheri L. Miller-Ott made an offer to purchase 1708 East Secretariat for $155,100 and sought VA financing for the full purchase price. The file reflected that Ms. Miller-Ott submitted (1) a typewritten letter, signed by herself, wherein she informed the VA that she received $5,500 monthly income from her plant business and $1,400 monthly income from the rental of a four-plex she owned; (2) four pre-printed residential rental agreements from the four-plex; (3) a deposit verification, signed by John Naslund, verifying that Ms. Miller-Ott had a money market account valued at $38,654.09 with the FILAC stock fund; (4) a credit statement; (5) profit and loss statements, signed by Gary Bulechek, of Henry and Horne Certified Public Accountants, for the Miller-Ott plant service; (6) a 1988 1040 Income Tax Return form indicating an adjusted gross income for Ms. Miller-Ott of $74,513; (7) a 1989 1040 Income Tax Return form indicating an adjusted gross income of $74,698 for Ms. Miller-Ott; and (8) a sales closing statement listing John Hall and Associates as the broker, and signed by Waters as the real estate sales agent.
 
 
 8
 At trial, Ms. Miller-Ott testified that the signature on the May 24, 1990, offer to purchase was her own, but that she had had no intention of purchasing 1708 East Secretariat, and in fact was not aware she had purchased the property until she returned from vacation in August 1990. Ms. Miller-Ott explained that during 1989 she had a monthly gross income of $742 stemming from government-assisted housing and social security disability. In addition, Ms. Miller-Ott testified that she neither owned, nor was the landlord of, a four-plex rental unit, and received no monthly income therefrom. Moreover, Ms. Miller-Ott testified that she did not have a money market account in the FILAC stock fund, and that she was not an employee or owner of Miller-Ott plant service, and received no monthly income from that service. Ms. Miller-Ott also testified that she did not file a tax return for 1988, and filed a 1040A for 1989 reflecting an adjusted gross income of $496.88. Ms. Miller-Ott further stated that Waters was aware of her financial condition and her corresponding inability to purchase a home for $155,100.
 
 
 9
 In explaining the discrepancy between the true facts as she represented them to be, and the facts set forth on the documents submitted to the VA in support of the offer to purchase 1708 East Secretariat, Ms. Miller-Ott testified that she had been romantically involved with Waters for approximately 3 1/2 years, and that Waters had simply presented her with blank or completed documents and she signed them at his request. While testifying, Ms. Miller-Ott admitted that the leases for the four-plex were fictitious, but that she had signed them at Waters's request. In addition, Ms. Miller-Ott testified that she had observed Waters sign the name "John Naslund" on the money market deposit verification form.
 
 
 10
 The Government also offered the testimony of Donella Freeland. Ms. Freeland testified that she had rented 1708 East Secretariat between August 1990 and December 1990. Ms. Freeland identified Waters as her landlord, and testified that she had paid him a total of $3,565 in monthly rent.
 
 
 11
 James L. Brubaker, chief property manager for the VA, testified that following the sale of the property to Ms. Miller-Ott, no payments were made, and the VA eventually foreclosed on the mortgage and reacquired the property. Mr. Brubaker also testified that the documents signed by Ms. Miller-Ott, and submitted in support of the offer to purchase, were critical to the VA's underwriting guidelines because they were the means by which the VA determined the buyer's eligibility. Ms. Rae Gregory, a loan specialist for the VA, also testified that if the underwriter had known that the documents submitted in support of the offer to purchase contained false information, the VA would not have approved the loan.
 
 2. The Carver Property
 
 12
 The Government submitted documents from the official VA file maintained on 3816 West Carver, which established that on June 10, 1990, Howard D. Lewis made an offer to purchase the Carver property for $199,000, and sought VA financing for the full purchase price. In support of the offer, the file reflected that the purchasing party submitted (1) a deposit verification form, signed and verified by Monica Ely, indicating a Merrill Lynch bond account balance of $67,861; (2) a profit and loss statement for Lewis Cattle Transport, reflecting gross sales of $112,454, and a year-to-date income of $62,254; (3) a 1989 1040 Income Tax Return form showing an adjusted gross income of $125,170; (4) a 1988 1040 Income Tax Return form reflecting an adjusted gross income of $125,485; (5) a letter submitted to the VA from Howard Lewis, and notarized by Ms. Miller-Ott, acknowledging that the property was being purchased "as is"; (6) a trust deed and rider signed by Howard D. Lewis and notarized by Ms. Miller-Ott; and (7) a sales closing statement listing John Hall and Associates as the broker, and signed by Waters as the real estate sales agent.
 
 
 13
 With respect to the Carver property, Ms. Miller-Ott admitted acting as the notary, per Waters's request, for the letter to the VA, the trust note, and the rider. Ms. Miller-Ott further admitted notarizing these items without Howard Lewis being present, and without any knowledge of whether Howard Lewis existed. Lastly, based on her familiarity with Waters's handwriting, Ms. Miller-Ott testified that she believed the "Howard D. Lewis" signatures on the documents had actually been written by Waters.
 
 
 14
 Monica Ely testified with respect to the deposit verification form for the Lewis account. Ms. Ely stated that she was a financial consultant at Merrill Lynch during the relevant time period, but that the verifying signature on the document was not hers, and she was unaware of how the document came to be verified. The Government also introduced an IRS certification form indicating that the social security numbers appearing on the Lewis tax returns submitted to the VA were valid social security numbers, but that the numbers had not been issued to "Howard D. Lewis."
 
 
 15
 Ms. Gregory testified that, had the VA known that the information contained on the documents submitted to the VA in support of the offer to purchase was false, the VA would not have approved the loan.
 
 3. The Ingram Property
 
 16
 The officially maintained VA file with respect to 22 East Ingram established that Waters personally made an offer to purchase the property, with the following supporting documents: (1) a profit and loss statement for Clint E. Waters Real Estate Sales, signed by Gary M. Henrichsen, indicating gross commissions for the period ending May 30, 1990, of $73,000, with a net profit of $45,483; (2) a 1989 1040 Income Tax Return for Waters showing an adjusted gross income of $80,336; (3) a 1988 1040 Income Tax Return for Waters reflecting an adjusted gross income of $66,896; (4) a credit statement for Waters, indicating employment for the past two years as a realtor with John Hall and Associates; $10,000 monthly income; $5,000 cash on hand; $500 savings; a car; $35,000 in household goods and furniture; and no outstanding debts; and (5) a sales closing statement listing John Hall and Associates as the broker, and signed by Waters as the real estates sales agent.
 
 
 17
 During the trial, Gary Henrichsen testified that he was not familiar with Waters, had not prepared a profit and loss statement for Clint E. Waters Real Estate Sales, and that the signature contained on that document was not his. The Government also introduced at trial an IRS certification form indicating that Waters had filed a 1989 1040, reflecting an adjusted gross income of $8,346, and a 1988 1040 reflecting an adjusted gross income $(-)12,853.
 
 
 18
 The Government also offered the testimony of Kenneth Green and Steve Dettman. Mr. Dettman and Mr. Green testified that they had rented an apartment from Waters at 22 East Ingram on August 1, 1990 and November 1, 1991, respectively.
 
 
 19
 Lastly, Ms. Gregory testified that, had the VA underwriter known that the information contained on the documents submitted in support of the offer to purchase was false, the loan would not have been approved.
 
 4. The Osborn Property
 
 20
 The Government submitted documents from the VA file for 1742 West Osborn establishing that on August 31, 1990, James and Dora Kittrell made an offer to purchase the property for $73,200, and sought VA financing for the full amount of the purchase price. In support of the offer to purchase, the VA file contained the following documents: (1) a profit and loss statement for Kittrell Plant Service, prepared by R.L. Niles, indicating gross sales for the period ending July 31, 1990 of $38,475, with a net income of $29,786; (2) a 1989 1040 Income Tax Return for James and Dora Kittrell, indicating a combined adjusted gross income of $48,650; (3) a 1988 1040 Income Tax Return for James and Dora Kittrell, reflecting a combined adjusted gross income of $47,952; (4) a credit statement signed by James and Dora Kittrell indicating $6,000 monthly income from Kittrell Plant Service; $1,000 cash on hand; $1,300 savings; two vehicles; $30,00 in household furniture and goods; 5.5 acres of land and a mobile home worth $39,000 and no debts; and (5) a closing statement listing John Hall and Associates as the broker, and signed by Waters as the real estate closing agent.
 
 
 21
 With respect to the Osborn property, Ms. Dora Kittrell testified that she and her husband had contacted Waters in 1990 and requested that he show them the property. Ms. Kittrell testified that she and her husband met Waters at the house, but that upon learning of the list price, informed Waters that they could not afford the property. Ms. Kittrell testified that, in response, Waters suggested they put in an application to see whether they would qualify. Ms. Kittrell testified that she and her husband agreed to this arrangement and signed "some kind" of paper, but that they had no intention to purchase the property because it was well beyond their means.
 
 
 22
 Following the meeting at the property, Ms. Kittrell testified that she phoned Waters and he informed her that they had been approved for the property, and now owned 1742 West Osborn. Ms. Kittrell stated that she informed Waters that they could not afford the property, and that, in response, Waters suggested that he give the Kittrells $1,000 to help make the payments on the property. Ms. Kittrell testified she and her husband moved into the property in November 1990, at which time Waters gave her $500 and a $500 "IOU" note.
 
 
 23
 When questioned about the documents submitted in support of the offer to purchase the Osborn property, Ms. Kittrell testified that she had signed the credit statement, but could not recall whether the statement was completed or blank at the time she signed it. In addition, Ms. Kittrell testified that the information contained on the statement was false, and that she had not provided that information to anyone. Ms. Kittrell also testified that the 1989 and 1988 1040 forms contained in the VA file were false, and inaccurately reflected her and her husband's combined adjusted income, as well as their respective social security numbers. Ms. Kittrell produced copies of their 1988 and 1989 1040 forms. These documents reflected $19,299 as the combined adjusted gross income for 1988, and $12,630 for 1989. Moreover, Ms. Kittrell testified that she was unfamiliar with the profit and loss statement submitted on behalf of Kittrell Plant Service, and that neither she nor her husband owned or were employed by Kittrell Plant Service.
 
 
 24
 Ms. Gregory testified that, had the VA known of the false information contained on the documents submitted in support of the offer to purchase, the VA would not have approved the loan.
 
 
 25
 With regard to each of the properties listed above, Mr. Brubaker testified that a check for the total amount of the commission was issued by the VA to the broker, John Hall and Associates. Mr. Brubaker testified that part or all of this commission is usually passed from the broker to the sales agent. Mr. Brubaker further testified that in analyzing each of the four properties, he noticed a pattern in the offers, in that each of the four purchasers offered more for the property than the listed asking price. Mr. Brubaker testified that the effect of this overbidding was an increase in the real estate commission. Lastly, Mr. Brubaker testified that for each of the properties, no payments were ever made toward the VA loan and, as a result, the VA foreclosed and reacquired each of the properties at a loss.
 
 
 26
 In reviewing the sufficiency of the evidence, this court must determine "whether a reasonable jury, after viewing the evidence in a light most favorable to the government, could have found the defendant guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Hernandez, 876 F.2d 774 (9th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 
 27
 In challenging the sufficiency of the evidence, Waters contends that the Government offered no direct evidence to establish that Waters was the individual who, in fact, completed and delivered the fraudulent forms comprising the purchase documents relied upon by the VA. However, circumstantial and testimonial evidence are indistinguishable in so far as the jury fact-finding is concerned, and, thus, circumstantial evidence may be admitted to prove any fact. United States v. Ramirez-Rodriguez, 552 F.2d 883, 884 (9th Cir.1977). Moreover, a jury is entitled to rely upon both direct and circumstantial evidence admitted during the course of a trial, and may infer any fact at issue from those facts that have been established by circumstantial evidence. United States v. Nelson, 419 F.2d 1237, 1241 (9th Cir.1969). As such, the jury properly relied upon the circumstantial evidence offered by the Government to prove the offenses sub judice.
 
 
 28
 In addition, Waters's challenge to the sufficiency of the evidence misapprehends the nature of the elements required to establish a violation of 18 U.S.C. Sec. 1001. 18 U.S.C. Sec. 1001 provides:
 
 
 29
 Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or documents knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.
 
 
 30
 As succinctly stated by this court in United States v. Boone, 915 F.2d 1524, 1544 (9th Cir.1991), proof of five elements is essential to sustain a conviction under section 1001: "a statement, falsity, materiality, specific intent, and agency jurisdiction."
 
 
 31
 In the present case, the direct and circumstantial evidence established that Waters, as the sales agent on each of the four properties, submitted documents to the VA that inaccurately represented the assets, identity, and economic history of the purported purchasers. The testimony of Ms. Miller-Ott, as well as Ms. Kittrell, established that Waters did so knowingly and wilfully. In addition, both Mr. Brubaker and Ms. Gregory testified as to the materiality of the statements contained within the documents, and their influential impact. Lastly, the VA is an agency of the United States. The evidence submitted by the Government was therefore sufficient to establish a violation of section 1001 with respect to each of the four counts of the Indictment, and we affirm.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 43(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Justin L. Quackenbush, Senior United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3