[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 3, 2010
JOHN LEY
CLERK

No. 09-15320
Non-Argument Calendar

_____

D. C. Docket No. 08-00333-CR-J-25-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNIE MELVIN PORTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 3, 2010)

Before TJOFLAT, EDMONDSON, and WILSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Johnnie Melvin Porter appeals his convictions for selling a firearm to a convicted felon, 18 U.S.C. § 922(d)(1), and for making a false statement to federal authorities, 18 U.S.C. § 1001(a)(2).[1] No reversible error has been shown; we affirm.

On appeal, Defendant challenges the sufficiency of the evidence on his convictions. He argues that the government's chief witness, Edward Tyrone Ballard, was incredible as a matter of law: Ballard's testimony about when he bought the Hi-Point from Defendant was impossible because Defendant did not yet have the gun himself. Defendant also argues that Ballard's testimony was flawed materially by bias and disputed by other parties to the extent that no rational trier of fact could rely on it to sustain a conviction.

We review the sufficiency of the evidence de novo; and we ask whether, after viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor, a reasonable trier of fact could have found the essential elements of the crime

---

[1]The accusations in the indictment included that Defendant sold a 9-millimeter Hi-Point pistol (the "Hi-Point") to a convicted felon and that Defendant later told federal authorities the Hi-Point had been stolen.

beyond a reasonable doubt. United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009). The jury is responsible for weighing and resolving conflicts in the evidence. United States v. Pearson, 746 F.2d 787, 794 (11th Cir. 1984).

Determining witness credibility is the "sole province" of the jury. United States v. Hamaker, 455 F.3d 1316, 1334 (11th Cir. 2006). And we will not disturb the jury's verdict on appeal unless the testimony is incredible as a matter of law. United States v. Flores, 572 F.3d 1254, 1263 (11th Cir.), cert. denied, 130 S.Ct. 561, 562, 568 (2009). "Testimony is only 'incredible' if it relates to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." Id. (citations and quotation omitted).

Here, conviction on both counts turns on the single issue of whether Defendant sold the Hi-Point. If Defendant sold the Hi-Point, this fact necessarily negates his theory that the gun was stolen and renders false his statements to that effect. See United States v. McCarrick, 294 F.3d 1286, 1290-91 (11th Cir. 2002) (explaining that, on occasion, a false statement charge and the underlying charge will both be contingent on the jury's finding of a single fact).[2]

---

[2]The other elements of the offenses are not in dispute. On the firearm count, Defendant conceded that he knew Ballard was a convicted felon. United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005) (listing the elements of a section 922(d) offense). And on the false statement count, Defendant conceded that he made a statement to federal agents which, if indeed false, was material and intentional and within the agents' purview. McCarrick, 294 F.3d at 1290 (listing the elements of a section 1001 offense).

Ballard, Defendant's cousin, testified that he bought the Hi-Point from Defendant at Defendant's house for $190 and that Defendant's girlfriend, Shameka McCray, and Ballard's girlfriend, Danielle Tran, both were present at the transaction as was Defendant's father.[3] Ballard earlier had given Defendant $50 as a down payment for the Hi-Point. Ballard could not remember the exact date he bought the Hi-Point, but stated that it was about a month or two before early September 2006, when he had gone to a local shooting range with Defendant, McCray, and Tran. Tran's testimony corroborated Ballard's account that he bought the Hi-Point from Defendant in the summer of 2006, as well as the people present at the transaction. And a police officer's testimony corroborated that Ballard gave Defendant a $50 down payment for the gun.

That Ballard's testimony had weaknesses is without doubt. He was a convicted criminal, and his criminal behavior was a source of bias in that it gave him incentive to cooperate.[4] And Ballard's recollection of the transaction was affected by his admitted substance abuse at the time. His account of when he purchased the gun is unclear and, as Defendant notes, suggests that he purchased

---

[3]Trial testimony revealed that police officers discovered the Hi-Point during a routine traffic stop of Ballard. A background check disclosed that Ballard was a convicted felon.

[4]In exchange for his testimony against Defendant, Ballard received a 5-year drug sentence when the government could have sought a minimum 10-year sentence and additionally charged him with firearms offenses.

the Hi-Point from Defendant before Defendant had even received it himself on 6 August 2006. But these weaknesses do not make Ballard's testimony legally incredible.

Other witnesses corroborated material aspects of Ballard's account of the transaction, including where it took place and who was present. Ballard admitted he could not be certain about the timing of the purchase and explicitly left open the possibility that the sale could have been in August. As such, this account did not render it physically impossible that Ballard purchased the Hi-Point after Defendant received it in August 2006. The date of sale was a point of conflict in the government's central theory that Defendant sold Ballard the gun, which the jury was entitled to resolve in the government's favor by concluding that Ballard bought the Hi-Point from Defendant at some point after Defendant already had possession of it. See Pearson, 746 F.2d at 794.

And by testifying himself, Defendant placed his own credibility at issue. We have concluded that when a criminal defendant chooses to testify on his own behalf, his statements, "if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt," meaning that the jury may conclude that the opposite of his testimony is true. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) (emphasis in original). Here, Defendant admitted at trial to

changing repeatedly his story about the location from which the firearm was stolen and provided inconsistent justifications for those changes.[5] Defendant also testified that Ballard personally confessed to stealing the Hi-Point but that Defendant did not call the police or tell investigating agents because he did not think to do so. Defendant maintained on the stand that he was surprised when agents later informed him that the Hi-Point was recovered from Ballard. The jury was entitled to disbelieve Defendant's account that the Hi-Point was stolen from him and to conclude that the opposite was true.

In sum, the evidence developed at trial presented two stories that stood in conflict to each other. The jury decided to credit one while discrediting the other, resulting in Defendant's conviction. We see no reason to undermine the jury's credibility determination and no reason to disturb the jury's verdict. See United States v. Yost, 479 F.3d 815, 818-19 (11th Cir. 2007) (we will disturb a guilty verdict only if "no trier of fact could have found guilt beyond a reasonable doubt").

AFFIRMED.

---

[5]Defendant initially told investigating officers that the theft occurred out of his father's truck, which was parked in front of the house that Defendant shared with his father. But later, he told officers that the theft occurred in the parking lot of a Best Buy retail store.