[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 28, 2006
THOMAS K. KAHN
CLERK

No. 04-10507

_____

D. C. Docket No. 03-00074-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEROME LENDON PAISLEY,
DAMEON FITZGERALD MILLER.
JASON JONES,
GARY LIVINGSTON ALLEN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(April 28, 2006)**

Before BIRCH and WILSON, Circuit Judges, and ROYAL*, District Judge.

PER CURIAM:

_____

*Honorable C. Ashley Royal, United States District Judge for the Middle District of
Georgia, sitting by designation.

The appellants, Kerome Paisley, Gary Allen, Jason Jones, and Dameon Miller were convicted by a jury for conspiracy to possess with intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii), and with using and carrying a firearm and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Paisley, Allen, and Miller were also convicted of possessing a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1); and Allen, Jones, and Miller were convicted of possessing a firearm as aliens unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5).

The district court, following the law at the time, sentenced Appellants under a mandatory application of the United States Sentencing Guidelines ("Guidelines"). The court sentenced Paisley to 420 months imprisonment; Miller to 248 months imprisonment; Jones to 211 months imprisonment; and Allen to life plus 60 months imprisonment. The court also sentenced each to five years supervised release.

Appellants appeal their convictions and their sentences. They raise the following errors:

> (1) That the district court erroneously denied Miller's, Jones's and Allen's motions for judgment of acquittal based on insufficient evidence;
>
> (2) That Jones's trial counsel was ineffective for failing to request a jury instruction;

2

(3) That the district court erroneously failed to instruct the jury on sentence entrapment, sentence manipulation, and outrageous government conduct;

(4) That in sentencing Miller, the district court erroneously assessed him one criminal history point for a prior conviction because the documentation evidencing the conviction was not certified in accordance with Fed.R.Evid. 1005; and

(5) That the district court erroneously sentenced Paisley, Jones and Allen in violation of Blakely/Booker.

We affirm.

**Background**

This case arises out of a government-created reverse sting operation in which an undercover government agent, Bureau of Alcohol, Tobacco and Firearms Special Agent Richard Zayas, posed as a disgruntled courier for a Colombian drug cartel. Zayas represented that he was looking for persons to assist him in robbing his employers and initiated a plan to rob his employer's fictitious "stash house" supposedly housing 20 to 30 kilograms of cocaine and large amounts of cash.

At Zayas' request, a confidential informant ("CI") introduced Zayas to Rohan McKay, an individual suspected of being involved with home invasion robberies in Florida. Zayas informed McKay that the stash house was guarded by two men, at least one of whom was armed, and contained 20 to 30 kilograms of cocaine and large amounts of cash. McKay joined with Zayas and the CI to rob

3

the stash house.  In discussions regarding details of the robbery, it was decided that McKay would secure a "crew" to assist in robbing the stash house of the cocaine and cash.  It was also planned that McKay, his "crew," and the CI were to meet Zayas on May 30, 2003, at a Super 8 Motel in Naples, Florida, from which they would leave to rob the stash house.

Needing a crew to help rob the stash house, McKay called on the services of a friend McKay knew had experience in this kind of crime to assist him in recruiting "experienced people" to help carry out the robbery.  That friend called on Appellant Paisley.  Paisley met twice with McKay to go over the details of the robbery.  McKay testified at trial that he told Paisley about the plans to rob the stash house, specifically stating that they would steal about "30 kilos of coke" and "about a couple hundred thousand in cash."  Paisley agreed to participate in the robbery.  Paisley brought two of his associates, Appellants Miller and Jones, to these two initial meetings with McKay.  During both meetings, Miller and Jones stayed in another vehicle while Paisley discussed the details of the robbery with McKay.  McKay testified he never discussed the robbery details with Miller and Jones.

The morning after Paisley met with McKay, McKay and the CI met with Paisley and the three other appellants, Miller, Jones and Allen. After stopping at a

4

nearby Home Depot for "tie straps" to use as handcuffs, the six then drove to Naples, Florida in order to meet Zayas at the Super 8 Motel parking lot. McKay and the CI led in his car, and the four Appellants followed in Paisley's van. Upon arrival at the motel, Paisley pulled in near the motel office where Appellant Jones left the van and went inside the motel lobby, engaging in tactics federal agents testified were consistent with "counter surveillance."

While Jones was "casing" the lobby, Paisley parked the van close to Zayas, who was already parked at the motel. Once Paisley was parked, Zayas got out of his car and went to the van to discuss the robbery plans with Paisley, Miller, and Allen. Zayas specifically told the three that there would be two men at the stash house, that there were 25 to 30 "keys of coke," and explained that when they got there, one of the two men at the stash house would go back to get the cocaine while the other would stay with Zayas. Zayas finally stated, "we're going to split it even, right? Is that cool with all you guys?" No one in the van protested, acted surprised, or asked for clarification. Zayas looked at each occupant and confirmed that each one was "straight" with the plan.

After confirming Paisley, Allen, and Miller were "straight" with the plan, Zayas walked toward the motel lobby and encountered Appellant Jones walking toward the van. Zayas asked if Jones was "with these guys," and then told Jones

5

the robbery plan–that there would be two guys at the house, that one guy had a gun, the other did not, and that "there's 20 to 25 keys of coke in there." Zayas asked Jones if he was "cool" and stated, "we're splitting the coke even, bro." Jones answered "all right."

Immediately after Zayas's conversation with Jones, law enforcement agents moved in to arrest McKay and the four Appellants. As the agents moved in, Appellant Allen attempted to flee but was brought down to the ground with rubber bullets. A loaded firearm fell from Allen's waistband, and agents seized a two-way radio. Agents also seized a two-way radio from Paisley along with a knife. Agents seized loaded handguns from both Jones and Miller. A search of the van revealed multiple guns, ammunition, and a blue duffel bag containing flex cuffs and duct tape.

McKay pled guilty and testified at trial for the government against Paisley, Miller, Allen, and Jones. A jury found all Appellants guilty as charged.

## I.    Sufficiency of the Evidence

Appellants Allen, Miller, and Jones each appeal the district court's denial of their motions for judgment of acquittal arguing that the evidence was insufficient to uphold their convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine. We review the district court's denial of a judgment

6

of acquittal *de novo*, viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility determinations made in the government's favor. United States v. Lyons, 53 F.3d 1198, 1200 (11th Cir. 1995). "In order to uphold the district court's denial of a judgment of acquittal and the jury's guilty verdict, this Court need conclude only that a reasonable fact finder could have found that the evidence established the defendant's guilt beyond a reasonable doubt." Id.

In order to sustain Miller's, Jones's, and Allen's convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine, we must find that the government offered sufficient evidence to prove beyond a reasonable doubt that (1) an illegal agreement existed to possess with the intent to distribute cocaine; (2) the defendant knew of this agreement; and (3) the defendant knowingly and voluntarily joined the agreement. United States v. Charles, 313 F.3d 1278, 1284 (11th Cir. 2002). In order to satisfy its burden, "the government need not prove that the defendant knew all of the details or participated in every aspect of the conspiracy. Rather, the government must only prove that the defendant knew the essential nature of the conspiracy." United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005) (quotations and citation omitted). Whether the defendant knowingly volunteered to join the conspiracy "may be proven by

direct or circumstantial evidence, including inferences from the conduct of the alleged participants or from the circumstantial evidence of a scheme." Id. (quotations and citation omitted).

Although circumstantial evidence may be used in proving a conspiracy, more than mere presence at the scene of the crime must be shown. United States v. Jenkins, 779 F.2d 606, 609 (11th Cir. 1986). However, a jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present. United States v. Lynch, 934 F.2d 1226, 1231 (11th Cir. 1991). Though a showing of *knowing participation* is required, "culpable participation need not be great." Lyons, 53 F.3d at 1201. "Guilt may exist even when the defendant plays only a minor role and does not know all the details of the conspiracy." Id.

With these principles in mind, and when viewed in the light most favorable to the government, the evidence in the record is sufficient to uphold each of Miller's, Jones's and Allen's convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine. The jury heard evidence that McKay was looking for "experienced people" to assist in robbing the stash house of cocaine and cash. In response to his need for "experienced people," McKay was introduced to Paisley with whom McKay met and discussed the details of the

8

robbery. The day after meeting with McKay, Paisley drove Miller, Jones, and Allen in his van, loaded with several guns and ammunition to Naples, Florida, to meet Zayas. Based on this evidence, the jury could have concluded that Miller, Jones and Allen were three of the "experienced people" recruited to rob the stash house of the cocaine. Furthermore, in assessing the evidence that the four Appellants drove together in a van loaded with guns and ammunition to Naples, Florida, a reasonable jury could infer that Paisley discussed the details of the robbery with his passengers, Miller, Jones, and Allen. While an inference of a defendant's participation from his presence and association with conspirators alone does not suffice to convict him, the inference is "a material and probative factor that the jury may consider in reaching its verdict." Lynch, 53 F.3d at 1201. (citing United States v. Iglesias, 915 F.2d 1524, 1527 (11th Cir. 1990)).

In addition to the evidence stated above, the evidence specific to Appellant Miller justifies the Court's conclusion that the evidence is sufficient to establish Miller's guilt beyond a reasonable doubt. Although he was unable to hear the initial conversations between Paisley and McKay, Miller was present during the two initial meetings in which Paisley met with McKay to discuss the plan to rob the stash house. More importantly, Miller was present in the van when Zayas discussed the plans for the robbery, specifically stating that they were going to

9

evenly split the 20 to 30 kilograms of cocaine. Miller neither protested nor acted surprised when Zayas spoke to them and indicated to Zayas he was "straight" with the plan. From this evidence alone the jury could have concluded that Miller knew that the essential nature of the conspiracy was to rob the stash house for the cocaine. When combined with the evidence that Miller was associated with Paisley, that he traveled in Paisley's van loaded with guns and ammunition with three other men including Paisley, and that authorities seized a loaded handgun from Miller upon arrest, a rational jury had sufficient evidence to find beyond a reasonable doubt that Miller knowingly and voluntarily joined the conspiracy to rob the stash house of 20 to 30 kilograms of cocaine.

Likewise, the evidence is sufficient to uphold Jones's conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine. Like Miller, Jones was present at the two initial meetings in which Paisley met with McKay to discuss the details of the robbery. Unlike Miller, Jones was not present in the van when Zayas set forth the details of the robbery; Jones was "casing" the lobby. However, Jones had his own encounter with Zayas during which Zayas asked if Jones was with "these guys" and explained that there would be two "guys" at the stash house, one with a gun, one without a gun and that there would be 20 to 25 "keys" in the house. Jones responded "all right" and asked if

10

Zayas had talked with the others. Zayas stated that "we're splitting the coke even bro" to which Jones again responded "all right." From this conversation, a reasonable jury could have concluded that Jones knew the essential nature of the conspiracy was to rob the stash house of the cocaine and confirmed his prior commitment to the plan. In addition, there was other circumstantial evidence that a rational jury could have considered as sufficient evidence that Jones knowingly and voluntarily joined the conspiracy–that Jones engaged in tactics that federal agents testified were consistent with "counter-surveillance," that he was an associate of Paisley, that he was present in a van with three other men, traveling to Naples, Florida, loaded with guns and ammunition, and that Jones himself was found by agents carrying a loaded semiautomatic firearm.

We also conclude that the evidence is sufficient to support Appellant Allen's conviction. Unlike Miller and Jones, Allen was not present during Paisley's first two initial meetings with McKay. Although Allen became involved later than Miller and Jones, a defendant may be found guilty of conspiracy even if he did not join it until after its inception, and even if he played only a minor role in the total scheme. United States v. Guerra, 293 F.3d 1279, 1285 (11th Cir. 2002) (citing United States v. Alvarez, 625 F.2d 1196, 1198 (5th Cir. 1980)). Allen was present in the front passenger seat of the van when Zayas set forth the plans for the

11

robbery and stated that they were all going to evenly split the 20 to 30 kilograms of cocaine. Allen neither protested nor act surprised and indicated to Zayas he was "straight" with the plan. From this evidence alone the jury could have concluded that Allen knew that the essential nature of the conspiracy was to rob the stash house for the cocaine. When combined with the other circumstantial evidence showing Miller's association with Paisley, his presence in the van loaded with guns and ammunition traveling to Naples, Florida, with three other men, Allen's attempt to flee when law enforcement agents entered the scene, and his possession of a loaded handgun and a two-way radio that matched the radio seized from Paisley, a rational jury had sufficient evidence to conclude beyond a reasonable doubt that Allen knowingly and voluntarily joined the conspiracy to rob the stash house of 20 to 30 kilograms of cocaine.

## II.    Ineffective Assistance of Counsel

Appellant Jones argues that his trial counsel rendered ineffective assistance of counsel by failing to request a jury instruction concerning the legal impossibility of conspiring with a government agent. See e.g., U.S. v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989) ("it is legally impossible to conspire with a government agent or informant who actually aims to frustrate the conspiracy."). This Court generally does not consider ineffective assistance of counsel claims on

direct appeal "as there usually has been insufficient opportunity to develop the record pertaining to the merits of these claims." United States v. Andrews, 953 F.2d 1312, 1327 (11ᵗʰ Cir. 1992). We conclude that the record in this case is not sufficient to adequately develop the merits of Jones's ineffective assistance of counsel claim, and therefore we do not reach the merits in this appeal.

## III. Outrageous Government Conduct, Sentence Manipulation, Sentence Entrapment

Paisley, Allen, and Jones argue that, in light of the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the district court erroneously failed to instruct the jury sua sponte on outrageous government conduct, sentence manipulation and sentence entrapment.[2] Appellants also argue that the district court erred at sentencing because the drug amount upon which each their offense levels were based–21 to 30 kilograms–resulted from sentence manipulation and sentence entrapment. This Court in United States v. Sanchez, 138 F.3d 1410 (11ᵗʰ Cir. 1998), rejected the

---

[2] Outrageous government conduct is a "defense that focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition." United States v. Sanchez, 138 F.3d 1410, 1413 (11ᵗʰ Cir. 1998). Sentence manipulation focuses on the government's conduct and requires courts "to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, or due process claim, must sometimes be filtered out of the sentencing calculus." Id. at 1414. Finally, sentence entrapment is the claim that "a defendant, although predisposed to commit a minor or lessor offense, is entrapped into committing a greater offense subject to greater punishment." Id.

13

availability of the use of sentence entrapment, sentence manipulation, and outrageous government conduct, in a case almost identical to the one at hand. However, Paisley, Allen, and Jones argue that our decision in Sanchez has been overturned by the Supreme Court's decision in Blakely, and therefore the jury verdict against Appellants should be reversed.

Appellants have failed to articulate any connection between Blakely and Sanchez that would require us to revisit our holding in Sanchez. Blakely, and the Supreme Court's later decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), do not address pre-sentence issues like the ones involved in Sanchez. Blakely and Booker concern constitutional limits on judicial authority at sentencing and do not otherwise overrule Sanchez. Sanchez remains good law.

Therefore, the case at hand is directly controlled by our decision in Sanchez. In Sanchez, several defendants were charged with drug conspiracy crimes arising out of a government-created reverse sting operation in which the defendants agreed to invade and steal drugs from a fictitious stash house they were told contained illegal drugs. Sanchez, 138 F.3d at 1412. The defendants argued outrageous government conduct and sentence manipulation on the basis that there were no actual drugs involved and the amount for which they were sentenced was

14

set by a government informant. Id. at 1413. This Court found that outrageous government conduct, while a viable defense in theory, was not shown in Sanchez or in any other case heard by this Court, and that it would require a showing that "government involvement in a criminal scheme [was] so pervasive that it would be a constitutional violation." Id. This Court stated that "[t]he fact that the government's fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing." Id. at 1414. We further held that sentencing entrapment is not recognized as a viable defense as a matter of law. Id. Therefore, Appellants' arguments are foreclosed by our decision in Sanchez.

## IV. Rules of Evidence at Sentencing

At Appellant Miller's sentencing hearing the probation officer entered into evidence copies of a non-certified probable cause arrest affidavit and a non-certified state sentencing order as evidence of a prior drug conviction. Miller argues the district court erroneously relied on these non-certified documents in assessing him one additional criminal history point because the documents did not comply with Fed.R.Evid. 1005. Miller's argument is without merit.

The Federal Rules of Evidence do not apply at sentencing proceedings. See Fed.R.Evid. 1101(d)(3). A district judge may rely on a document at sentencing as

15

long as it is reliable. United States v. Lynch, 934 F.2d 1226, 1236 (11th Cir. 1991) ("In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). Miller does not argue that the documents relied upon by the district court were unreliable.

## V.    **Blakely/Booker Sentencing Issues**

Paisley, Jones, and Allen raise for the first time on appeal several arguments that their sentences were imposed in violation of Blakely. While the instant appeal was pending, the Supreme Court decided Booker, wherein the Court extended the holding in Blakely to the Guidelines; therefore we consider this appeal under Booker as well.[3]

Because the appellants did not raise any constitutional objection to application of the Guidelines in the district court, we review only for plain error.

---

[3] In their briefs, written before the Supreme Court's decision in Booker, the Appellants argued that Blakely rendered the Guidelines unconstitutional. This argument has been foreclosed by Booker. The Supreme Court in Booker determined that it was the binding nature of the Guidelines that violated the Sixth Amendment. The Court then excised the provisions of the Sentencing Reform Act making the Guidelines mandatory and providing for *de novo* review of sentences on appeal and, in doing so, effectively made the Guidelines advisory. Booker at 245-246.

United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). To satisfy the plain error test, we must find that the district court committed (1) error, (2) that is plain, and (3) that affects the defendants' substantial rights. Id. If these three criteria are met, this Court may, in its discretion, correct the plain error if it (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

We have stated there are two types of Booker error: (1) constitutional error or Sixth Amendment error–the error of imposing sentence enhancements (other than prior convictions) that were neither admitted to by the defendant nor found by jury under a mandatory application of the guidelines; and (2) statutory error–the error of sentencing a defendant under a mandatory guidelines scheme even in the absence of a Sixth Amendment enhancement violation. United States v. Williams, 139 Fed. Appx. 215, 218 (11th Cir. 2005) (per curiam) (citing United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005)). If either constitutional or statutory error is found when the district court applies the guidelines as mandatory, that error is plain because it is contrary to the law at the time of the appeal. Id. (citing Rodriguez, 398 F.3d at 1299).

Here, because the district court applied the Guidelines as mandatory when sentencing each of the Appellants, it is clear there was plain error and that the first

17

two prongs of the test are met. It is therefore the third prong of the plain error test–that the error must affect the defendants' substantial rights–that must be analyzed. To meet this third prong of the test is a heavy burden. The appellants must show that "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301; see also Shelton, 400 F.3d at 1332. If there is no evidence in the record showing that sentencing judge would have reached a different result, the appellants have not met their burden of showing that their substantial rights have been affected and the plain error test fails. Id.

### *Paisley*

Paisley claims the district court committed two Blakely/Booker errors that entitle him to be resentenced: (1) that the district court erroneously enhanced his sentence for his role in the conspiracy as a manager or supervisor pursuant to U.S.S.G. § 3B1.1(b), and (2) that the district court erroneously enhanced his sentence based on a drug quantity that was not alleged in the indictment nor proven to a jury. As to the second argument, Paisley specifically contends that the district court erred under Blakely/Booker by basing his offense level under the guidelines upon 21 to 30 kilograms of cocaine when the jury found only that he

18

was responsible for more than 5 kilograms. Paisley contends that because both the manager/supervisor role enhancement and the drug quantity enhancement were neither admitted by Paisley nor proven to a jury, such enhancements were applied in violation of Blakely, and he is therefore entitled to be retried and/or resentenced. Paisley's argument fails.

Paisley satisfies the first two prongs of the plain error test: the district court applied both enhancements under a mandatory application of the guidelines based on findings made by the judge that went beyond the facts admitted by Paisley (he objected to both enhancements in the presentence investigation report) or found by a jury, and therefore committed both statutory and constitutional Booker error; these errors are plain. See Rodriguez, 398 F.3d at 1298-1299. However, Paisley is not entitled to be resentenced because he has not met his burden in proving the third prong of the plain error test.

Specifically, Paisley has neither alleged nor shown that he would have received a lesser sentence had the district court considered the guidelines advisory as opposed to mandatory. Moreover, the record does not show that the district court would have been inclined to have imposed a lesser sentence but for the then-mandatory nature of the guidelines. Paisley, therefore, has not met his burden of showing a reasonable probability that the result of his sentencing would have been

19

different but for the <u>Booker</u> error, and this Court need not apply the fourth prong of the plain error test. <u>Rodriguez</u>, 398 F.3d at 1301.

Paisley also contends that only the jury may determine the exact amount of drugs to be attributed to the defendant. This is not the case. The constitutional <u>Booker</u> error is not the district court's finding as to drug quantity. Rather the constitutional error is the district court's use of that drug quantity in a mandatory guideline scheme. It is settled that the district court may enhance sentences based on judicial factfinding of drug quantity. <u>See</u> <u>id.</u> at 1296.

### *Jones*

Jones also argues for the first time on appeal that he should be resentenced because the district court erroneously enhanced his sentence based on a drug quantity that was not alleged in the indictment nor proven to a jury in violation of <u>Blakely/Booker</u>. Like Paisley, Jones satisfies the first two prongs of the plain error test: the district court's mandatory application of the Guidelines based upon the 21 to 30 kilogram drug amount that was not admitted by Jones (he objected to the drug amount in his PSI report) nor proven to a jury beyond a reasonable doubt is constitutional <u>Booker</u> error, and that error is now plain. <u>See</u> <u>Rodriguez</u>, 398 F.3d at 1299. However, Jones fails to satisfy the third prong of the plain error test.

Specifically, Jones has not proven and the record does not show that he would have received a lower sentence had the district court considered the guidelines advisory as opposed to mandatory. He has not met his burden of showing a reasonable probability that the result of his sentencing would have been different but for the Booker error, and this Court need not apply the fourth prong of the plain error test.

### *Allen*

Allen contends he is entitled to be resentenced based on two Blakely/Booker errors: (1) that the district court erroneously failed to grant him a downward departure for minimal role pursuant to U.S.S.G. § 3B1.1(B), and (2) that the district court erroneously enhanced his sentence based on a drug quantity that was not alleged in the indictment nor proven to a jury. Allen's arguments also fail.

In sentencing Allen, the district court did *not* commit *constitutional* Booker error because Allen did not object to his offense level being based on a 21 to 30 kilogram drug amount. The district court *did*, however, commit *statutory* Booker error in sentencing Allen under a mandatory application of the Guidelines. Nevertheless, Allen is not entitled to be resentenced because the district court sentenced him to the statutory mandatory minimum sentence. While the record

21

does reflect that the Judge had reservations in imposing a life sentence on Allen, the life sentence is a statutory mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(ii) due to Allen's criminal history. District courts are still bound by statutory minimum sentences after Booker. Shelton, 400 F.3d at 1333 n.10. The statutory Booker error in this instance is harmless because the court can not impose a lesser sentence due to the statutory minimum. See United States v. Raad, 406 F.3d 1322, 1323, n.1 (2005); see also Shelton, 400 F.3d at 1331 n.7 ("Booker error is subject to both harmless-error and plain-error review and for that reason does not always require a remand, and often will not.").

      AFFIRMED.