**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hazel LYONS, Judith Price, Terry Reese,
a/k/a Terrance Towns, Angela Reese,
Defendants–Appellants.**

No. 93–4502.

United States Court of Appeals,
Eleventh Circuit.

June 2, 1995.

Eric M. Cohen, Coral Gables, FL, for Lyons.

Geoffrey C. Fleck, Gainesville, FL, for Price.

William M. Norris, P.A., Coral Gables, FL, for T. Reese.

Theodore G. Mastos, John H. Lipinski, Miami, FL, for A. Reese.

Roberto Martinez, U.S. Atty., Linda Collins Hertz, Kathleen M. Salyer, Laurence M. Bardfeld, Asst. U.S. Attys., Miami, FL, for U.S.

Before KRAVITCH and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Appellants Angela Reese, Terry Reese, a/k/a Terrance Towns, Judith Price and Hazel Lyons appeal their convictions for conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count I), and distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts II–VIII). Reese and Towns also appeal their sentences. Reese's and Towns' convictions and sentences are affirmed without opinion. *See* 11th Cir.R. 36–1.

Price asserts as error the denial of her motion for judgment of acquittal. Lyons appeals the trial judge's refusal to instruct the jury to disregard a co-defendant's testimony against her (Lyons). For the following reasons, we affirm the convictions of Price and Lyons.[1]

---

1. We find no merit in Price's or Lyons' other assignments of error.

## I. STANDARDS OF REVIEW

■ We review the sufficiency of the evidence *de novo*. *United States v. Keller*, 916 F.2d 628, 632 (11th Cir.1990), *cert. denied*, 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991). We look at the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor. In order to uphold the district court's denial of a judgment of acquittal and the jury's guilty verdict, this court need conclude only that a reasonable fact finder could have found that the evidence established the defendant's guilt beyond a reasonable doubt. *Id.*

■ In reviewing the denial of a requested jury instruction, we consider whether that instruction: (1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury. If the Appellant alleging error cannot show any one of these elements, the district court did not commit reversible error. *United States v. Jennings*, 991 F.2d 725, 731 (11th Cir.1993).

## II. ANALYSIS

### A. *Judith Price*

The evidence presented against Price at the trial of this case involved two separate crack cocaine transactions. Price, Reese, and Towns were present at the first such transaction at which undercover agent Timothy Smith purchased crack cocaine; and these same three co-conspirators appeared again on a second occasion to sell crack cocaine to agent Smith.

On April 29, 1992, agent Smith called Reese requesting $1000.00 worth of crack cocaine. At approximately 2:00 p.m. Reese drove her red Omni to 3107 Carter Street which was known to the undercover agents as a "crack house" where Reese and others secured drugs. Price was with Reese in the car, which Reese parked on the street just in front of the crack house.

After Reese went up to the house, Reese and Price drove to a Burger King which was five minutes away and parked in the lot. Smith entered the rear seat of Reese's car. Reese offered to sell Smith $700.00 worth of crack cocaine, but the agent asked for more. There is no question that Price both saw the crack cocaine and was well aware of the nature of transaction taking place. There is no question that Reese was aware of Price's presence during this otherwise clandestine transaction. Indeed, Reese made no effort to conceal the drug dealing from Price.

After Smith told Reese that he wanted to purchase an additional $1000.00 worth of crack cocaine, Price again accompanied Reese to the crack house. The agent who was surveilling the crack house, Willie Lee Hawkins, testified that he observed the red Omni return to the crack house, and park again in the same location. All three of the occupants, Price, Reese and Towns, exited the car. Hawkins saw all three start walking towards the door of the crack house. Hawkins moved towards the crack house in an adjacent yard, but by the time he got near the front door, all that he then observed was Reese exiting the house. Then he saw all three re-enter the car and drive off towards the Burger King.

Agent Smith testified that he saw them return to the Burger King. Reese and Price dropped Towns off there and drove around briefly before parking across the street. Price remained in the car with Reese. They could see Towns and Smith in the parking lot. Towns approached Smith's car and informed him that "things were slow" and he (Towns) had only the $700 worth of crack cocaine that Reese had offered to sell earlier that day. Smith purchased the crack cocaine.

On May 8, 1992, Reese again agreed to meet agent Smith in the Burger King parking lot to sell him crack cocaine. Shortly after Smith arrived, Reese, Towns, and Price arrived together in the red Omni. The car stopped in the vicinity of the parking lot. Towns got out of the car, walked over and entered Smith's car. When Towns showed Smith the crack cocaine, he was arrested.

Other agents arrested Reese and Price as they drove away from the Burger King.

Price concedes that viewing this evidence in the light most favorable to the government "the jury was free to find that Price knew what Reese was doing, knew that it was illegal, and, for whatever reason, did nothing about it." Price argues, however, that because there was no direct evidence that she either entered into the drug deal negotiations, or handed over the drugs, her "mere presence" on these two occasions "contributed nothing to Reese or her criminal venture." She insists that the jury could not find that she did anything to further any conspiratorial objective, or that she intended to further any such objective.

Price objects to the district court's conclusion that "she was not merely a spectator *without* guilty knowledge" (emphasis added) and asserts that the law of this circuit allows her to have been a "knowing, and even sympathetic, spectator", without being culpable as a co-conspirator. She was no more than an observer, and, she asserts, "observation is no crime."

She relies on a line of cases in which we have held that close association with a co-conspirator or mere presence at the illegal sale of drugs is, by itself, insufficient evidence to support a conviction for conspiracy to possess and distribute drugs. *See e.g. United States v. Perez–Tosta*, 36 F.3d 1552, 1557–58 (11th Cir.1994); *United States v. Bell*, 833 F.2d 272, 275 (11th Cir.1987), *cert. denied*, 486 U.S. 1013, 108 S.Ct. 1747, 100 L.Ed.2d 210 (1988); *United States v. Adams*, 799 F.2d 665 (11th Cir.1986), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987); *United States v. Cruz–Valdez*, 773 F.2d 1541, 1544 (11th Cir.1985), *cert. denied*, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986); *United States v. Bain*, 736 F.2d 1480, 1485 (11th Cir.1984), *cert. denied*, 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984); *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983).

■ Price is correct. Mere presence, guilty knowledge, even sympathetic observation have all been held by this court to fall short of the proof required to support her conviction in this case. A showing of *know-*

*ing participation* is required. The government, in this case, must have proved that an agreement existed between two or more persons illegally to possess and distribute drugs and that Price knowingly and voluntarily joined or participated in the conspiracy. *See United States v. Sullivan*, 763 F.2d 1215, 1218 (11th Cir.1985).

■ Price's participation in the conspiracy, however, need not be proved by direct evidence. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Vera*, 701 F.2d at 1357. That she had a common purpose and plan with the other conspirators may be inferred from a "development and collocation of circumstances." *Id.* Presence at such drug trafficking is one of those circumstances. It raises a permissible inference of participation in the conspiracy. While the inference of her participation from her presence and association with conspirators alone does not suffice to convict her, the inference is "a material and probative factor that the jury may consider in reaching its verdict." *United States v. Iglesias*, 915 F.2d 1524, 1527 (11th Cir.1990). We have observed that:

> [i]n most cases ... the evidence establishes not mere presence but presence under a particular set of circumstances. In such a case the task of determining the sufficiency of the evidence is not aided by the ritualistic invocation of the "mere presence" rubric. Rather, it requires an examination of all the proved circumstances, including presence, to determine whether from them a reasonable jury could infer and find beyond a reasonable doubt knowing and intentional participation.

*Cruz–Valdez*, 773 F.2d at 1545.

■ Culpable participation need not be great. Guilt may exist even when the defendant plays only a minor role and does not know all the details of the conspiracy. *United States v. Badolato*, 701 F.2d 915, 920 (11th Cir.1983). Furthermore, a defendant who aids and abets the commission of a crime is guilty as a principal. *United States v. Espino–Perez*, 798 F.2d 439, 442 (11th Cir.1986).

The trial judge properly instructed the jury as to this law in this case. He gave the following instruction:

> Judith Price and Hazel Lyons have each asserted that they merely associated with others who may have been involved in the crimes charged and that each was merely present during 2 of the alleged drug transactions, that neither was an active participant in the crimes charged and did not enter into and participate in an agreement to possess with intent to distribute drugs and therefore are not guilty. *And even though they may have been knowing spectators they are not guilty.* (emphasis added)

■■■ Evidence need not be inconsistent with every reasonable hypothesis except that of guilt in order to be sufficient. The jury is free to choose among reasonable constructions of the evidence. *United States v. Christopher,* 923 F.2d 1545, 1553 (11th Cir. 1991). This standard remains the same whether the evidence is direct or circumstantial. *United States v. Gonzalez,* 719 F.2d 1516, 1521 (11th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984). The jury's verdict must stand unless no trier of fact could have found guilt beyond a reasonable doubt. *United States v. Battle,* 892 F.2d 992, 998 (11th Cir.1990).

■■■ Viewing the evidence against her in the light most favorable to the government, the jury in this case could reasonably conclude that Price was more than a "guilty spectator." On April 29, she accompanied Reese to the crack house to secure the crack cocaine for agent Smith. She was present in Reese's car during the initial meeting with Smith in the Burger King parking lot. She could both see and hear Reese's negotiations with Smith. There is no question, indeed Price concedes, that she knew she was present at a drug deal. She accompanied Reese to the crack house to secure more drugs.

She and the others exited the car and walked towards the house. Later, she chose to return with Reese and Towns to the Burger King. Her deliberate return permitted the jury to infer that she not only knew she was present at a drug deal, but that she intended to contribute to the conspiratorial objective by assisting Reese in countersurveillance.[2]

On May 8th, after Smith arranged another "buy," from Reese, Price again showed up at the Burger King with Reese. Although this sale occurred outside Reese's car, the similarity of the circumstances of the two sales, and Price's voluntary presence again, supports the jury's conclusion that beyond a reasonable doubt Price was not only present, but she was a knowing and willing participant in the conspiracy.[3] *See Perez–Tosta,* 36 F.3d at 1557 (evidence of prior acts can bolster jury's findings that defendant was not merely bystander) (citing *United States v. Adams,* 799 F.2d at 672 (agreement and knowing participation are logical inferences to be drawn when defendant accompanies codefendant to two drug transactions).

The foregoing facts also support a reasonable inference that Price committed an act which furthered the possession of cocaine with the intent to aid in the commission of the offense, as required to convict her of aiding and abetting the possession of cocaine with intent to distribute. *United States v. Perez,* 922 F.2d 782 (11th Cir.), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1009 (1991) (aiding and abetting theory). Riding in Reese's car on two occasions and twice accompanying Reese to the crack house were sufficient actions under the circumstances.

Evidence of "mere presence" alone is not sufficient to convict of these charges. But presence is no virtue. One who is present at—or in the company of those clearly engaged in—drug deals is skating on thin ice; and one whose knowing and willful presence

---

2. A police officer testified that he conducted aerial surveillance from a helicopter, and that the method Reese employed in dropping off Towns, driving the long way around the block and parking across the street from the Burger King, was, in his opinion, countersurveillance.

3. Price was acquitted of the charges involved in Count VI, distribution on April 29, 1992. The evidence adduced on that charge, however, may be considered by the jury on other counts. *See United States v. Rosenthal,* 793 F.2d 1214, 1229 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987).

crosses over into participation may drop through that ice into the penitentiary. Price may have been merely present once; but twice, under all the circumstances of this case,[4] strains our credulity, as it did the jury's. The jury rejected Price's defense of "mere presence" in convicting her as they were entitled to do, and we shall not disturb that conviction.

### B. *Hazel Lyons*

On March 27, 1992, the confidential informant contacted Reese about purchasing crack cocaine. Pursuant to the telephone conversation, on that same day, the undercover agent and the confidential informant met with Reese, Lyons, and a person identified as "Roy" at the Burger King parking lot. Introductions were made and Roy got out of Reese's car. The agent gave him $1000. Roy took out a brown paper bag and dropped it into the driver's seat of the agent's car. The bag contained 14.4 grams of crack cocaine. Roy then got back in Reese's car. Reese and Lyons remained in the car during the deal. The meeting was videotaped and played for the jury.

On April 21, 1992, the agent called Reese again. They agreed to meet at the Burger King parking lot. Reese and Lyons arrived in Reese's car. The agent purchased crack cocaine for $500, and told Reese and Lyons that he had a friend who wished to purchase another $500 worth of crack cocaine.

Reese and Lyons left. After ten minutes they returned to the parking lot. Reese exited the car, said she was going inside the Burger King, and told the agent to get in the back seat with Lyons. The agent did so and handed Lyons $500. Lyons gave the agent 5.184 grams of crack cocaine. The meeting was videotaped and played for the jury. Lyons and the agent were not, however, visible on the videotape.

Later that day, the agent called Reese. Lyons answered the phone. The agent and Lyons discussed buying larger amounts of crack cocaine to sell in another county. He told Lyons to discuss this request with Reese.

After the government rested its case, Reese testified on her own behalf. Regarding the April 21 meeting, she stated that, after the first meeting with the agent, she acquired more crack cocaine as the agent had requested, after which she and Lyons returned to the parking lot. She stated that she did not hand the crack cocaine to the agent, but left it in the car with Lyons and that the agent got into the car.

Lyons contends that the trial judge improperly refused her request that he instruct the jury they could not consider any of Reese's testimony against her in arriving at their verdict. She cites *United States v. Thomas*, 987 F.2d 697, 703 (11th Cir.1993) for the proposition that a jury may not consider one defendant's testimony against the co-defendant because the co-defendant has no "control" over the testimony of the other. Lyons recites the following language from *Thomas*:

> ... "the decision of a codefendant to testify and produce witnesses is not subject to the defendant's control ... nor is such testimony within the government's power to command in a joint trial." Consequently, there is no reason to hold a defendant responsible for testimony over which he has no control.

---

4. The dissent appears to have adopted Price's argument that because there is no direct evidence that she entered into the drug deal negotiations, or handed over the drugs, there is *no proof* against her other than her mere presence. *This position expands the "mere presence" rule to a requirement for proof by direct evidence.*

We know of no case, and the dissent does not point to one, which says that the jury's verdict may not be supported by circumstantial evidence. If that is the law, many drug conspiracy convictions have been wrongfully affirmed by this court in the past. But that is not the law. Participation in a drug conspiracy can be, and

frequently is, proven not by direct evidence, but by circumstantial evidence. We have cited this law above, and it is axiomatic. The dissent dismisses the circumstances under which Price was present at the two drug deals as no "proof" and states that we affirm Price's conviction "based on nothing." But the probative value of circumstantial evidence is just as "clear" a rule of law as that requiring more than mere presence to convict Price. The circumstantial evidence in this case certainly rises at least to the level of "one jot, title, or iota of evidence ..." that Price facilitated and participated in this crime.

987 F.2d at 703, quoting *United States v. Belt*, 574 F.2d 1234, 1237 (5th Cir.1978).

■■■ Lyons reliance on *Thomas*, however, is misplaced. That case holds only that a defendant who, at the end of the government's case-in-chief, makes a Rule 29 motion for an adjudication of the sufficiency of the evidence, has a right to have that motion resolved on the basis of the evidence in the record at that time. If there were only one defendant, and the evidence at the close of the government's case was insufficient, the motion would be granted and the defendant found not guilty.

*Thomas* guards against the case where a co-defendant's subsequent testimony might supply the "missing links" in the government's case, thus permitting the trial judge to resolve a reserved Rule 29 motion against the moving defendant. *Thomas* holds that a co-defendant's subsequent testimony cannot be allowed to supply those missing links. If, at the end of the government's case-in-chief, a defendant moves for an adjudication of the sufficiency of that case, the defendant has a right to have that motion resolved on the basis of the evidence in the record at that time, even if the trial judge reserves ruling until a later time.

■■■ That is not the issue here, however. In this case, the government produced ample evidence before the close of its case to support a guilty verdict. The agent testified to Lyons' presence at the March 27 and April 21 crack cocaine buys. Videotapes showed Lyons arriving at those meetings with Reese in her car. The agent testified that Lyons personally handed him the crack cocaine at the second meeting on April 21. He further testified to his telephone conversation with Lyons regarding buying larger amounts of crack cocaine to sell in another county.

Lyons' Rule 29 motion made at the end of the government's case was immediately and properly denied.

Unlike the court in *Thomas*, we are not being asked to disapprove the inclusion of subsequently introduced evidence into the trial judge's consideration of a reserved Rule 29 motion. On the contrary, we are being asked to extend the holding of *Thomas* beyond the context of a Rule 29 motion to disallow a jury's consideration of *any* co-defendant testimony. Lyons urges us to conclude that the holding of *Thomas* is that a defendant may never be exposed to the consequences of testimony over which she has no "control".

This is obviously not the law. If so, no defendant would ever be convicted of any crime. Furthermore, even in the more limited context of co-defendant testimony, *Thomas* prohibits consideration of such testimony only in the *court's* consideration of a Rule 29 motion made at the close of the government's case. The jury, however, is free to consider all evidence in the record at the time they receive the case.[5]

The government's evidence apart from Reese's testimony was sufficient to allow the case to go to the jury. The jury is free to consider all evidence introduced during the trial when they deliberate. The denial of Lyons' request for a jury instruction to the contrary was not error.

The convictions of Price and Lyons are

AFFIRMED.

CARNES, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's holding that the convictions and sentences of Hazel Lyons, Terry Reese, a/k/a Terrance Towns,

---

5. This is not the first time that a defendant has noticed that her co-defendant's testimony was prejudicial to her. We have long recognized that such prejudice is inherent in the joint trial of several co-defendants, precisely because the defensive strategy and testimony of one co-defendant may damage another.

Nevertheless, the Supreme Court has held that such prejudice must be carefully monitored, not forbidden. *Zafiro v. United States*, ___ U.S. ___, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). In *Zafi-*

*ro*, the Court noted that the right to a fair trial does not include the right to exclude relevant and competent evidence. The Court observed that "[a] defendant normally would not be entitled to exclude the testimony of a former co-defendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant." *Id.* at ___, 113 S.Ct. at 938.

and Angela Reese are due to be affirmed. However, I dissent from the majority's holding that the government presented sufficient evidence to sustain Judith Price's conviction.

"In reviewing the sufficiency of the evidence, this Court is limited to inquiring whether, construing the evidence and drawing all inferences and credibility choices in the Government's favor, any reasonable jury could have found the defendant[ ] guilty beyond a reasonable doubt." *United States v. Newton,* 44 F.3d 913, 921 (11th Cir.1994). After reviewing the record and drawing all inferences and credibility choices in the government's favor, the evidence supports only the following relevant facts.

On April 29, 1992, Judith Price sat in the front passenger seat of a car driven by Angela Reese. Reese stopped that car at a crack house and, while Price remained in the car, Reese exited the vehicle to approach the building. After Reese drove the car to another location, a government agent entered the back seat of the vehicle, and Price observed Reese selling the agent $700–worth of cocaine. During that time, Price never spoke, handled any drugs, or did anything that facilitated the drug transaction. After the agent asked Reese to secure an additional $1000–worth of cocaine, Price remained a passenger in the car as Reese picked up Towns and as Reese searched for more cocaine before rejoining the agent. During Reese's search for cocaine, Reese again stopped the car at the crack house, and Reese, Price, and Towns exited the car. However, the DEA special agent observing the trio never saw Price enter or exit the crack house, and there is no evidence that she did. The jury. acquitted Price of the charge that she distributed crack cocaine on April 29, 1992, the only substantive charge against her related to that date.

On May 8, 1992, Price sat in *Reese's car* as the conspirators conducted another drug transaction in *the agent's car.* No evidence indicates that Price saw any cocaine on this occasion, nor is there any evidence she overheard any conversation relating to the drug transaction. There is certainly no evidence that she did anything to facilitate the drug transaction. All that the evidence shows as to Price on May 8, 1992, is that she was merely present. In spite of the lack of evidence that Price was involved in any crime that occurred on that date, the jury convicted her of two counts of possessing crack cocaine with the intent to distribute on that date. One of these counts related to the narcotics seized from the crack house, while the other count involved the narcotics from Towns's drug transaction in the agent's car on that date.

The jury also convicted Price of conspiracy to possess with intent to distribute and to distribute crack cocaine. However, there was *no* evidence relating to her involvement in such a conspiracy, other than the evidence of her mere presence on the two occasions discussed.

The majority's conclusions about the events of April 29 and May 8, 1992, lack a foundation in the evidence. For example, the majority concludes that on April 29, 1992, Price "accompanied Reese to the crack house to secure the crack cocaine for agent Smith" and "to secure more drugs." Majority op. at 1202. But there is no evidence that Price went to that location for the purpose of securing cocaine, nor any evidence that she secured any cocaine. She was never seen entering or leaving the crack house. The most the evidence establishes is that she was merely present outside the house.

The majority's rendition of the facts attributes to Price actions of Reese. For example, the majority says that, "After Reese went up to the house, Reese and Price drove to a Burger King which was five minutes away and parked in the lot," *id.* at 1200, and that, "Reese and Price dropped Towns off there and· drove around briefly before parking across the street," *id.* at 1200. It is undisputed that Reese was the driver. Price was merely a passenger. It was Reese the driver, not Price the passenger, who drove to the Burger King, who dropped Towns off, and who parked the car. The government does not contend otherwise, nor could it.

The majority also states that because Price returned to the Burger King with Reese and Towns, a jury could infer "she intended to contribute to the conspiratorial objective by

assisting Reese in countersurveillance." *Id.* at 1202. The majority offers no justification whatsoever for that deductive leap other than a footnote reference to the fact that Reese the driver—not Price the passenger—engaged in what an officer believed was countersurveillance when Reese dropped off Towns. *Id.* at 1202 n. 2. There is no evidence at all that Price engaged in any countersurveillance.

As for the May 8, 1992, incident, the majority states that "the similarity of the circumstances of the two sales, and Price's voluntary presence again, supports the jury's conclusion that beyond a reasonable doubt Price was not only present, but she was a knowing and willing participant in the conspiracy." Majority op. at 1202. However, the majority cites no authority for the proposition that if one is merely present *twice,* a jury can infer knowing and willful involvement in a drug conspiracy.* Such a proposition runs counter to this circuit's well-established rule that "[m]ere presence is insufficient to establish knowing participation in a conspiracy, as is mere association with conspirators." *United States v. Sullivan,* 763 F.2d 1215, 1218 (11th Cir.1985) (citation omitted); *see also Newton,* 44 F.3d at 922 ("Association with a coconspirator is insufficient to prove participation in a conspiracy. At a minimum, the defendant must willfully associate himself in some way with the criminal venture and willfully participate in it as he would in something he wished to bring about." (citation omitted)); *United States v. Young,* 39 F.3d 1561, 1566 (11th Cir.1994) ("It is axiomatic that mere association, without more, cannot give rise to a conspiracy conviction."); *United States v. Perez–Tosta,* 36 F.3d 1552, 1557 (11th Cir.1994) ("The inference of participation from presence and association with conspirators alone does not suffice to convict."). Even while recognizing that clear rule of law, however, the majority still affirms Price's conviction based on nothing other than mere presence and association.

The majority does so in spite of its recognition that "[a] showing of *knowing participation* is required," and that in order to be entitled to an affirmance, the government "must have proved that an agreement existed between two or more persons illegally to possess and distribute drugs and that Price knowingly and voluntarily joined or participated in the conspiracy." Majority op. at 1201. Beyond Price's mere presence at the drug transactions, there is no "proof" that she was involved in a conspiracy to sell drugs. Beyond her mere presence, there is not one jot, tittle, or iota of evidence that Price did anything to facilitate or participate in any crime.

The problem is not one of the nature of the evidence—whether circumstantial or direct—but of its quantity. A defendant's participation in a crime certainly can be proven by circumstantial evidence, if there is enough of it. Until today, however, the decisions of this Court had squarely and consistently held that evidence of mere presence without additional evidence—whether circumstantial or direct—is insufficient to prove beyond a reasonable doubt participation in a crime.

Even when a defendant's presence has been accompanied by circumstances raising more suspicions than those attendant to Price's presence in this case, we still have held the evidence insufficient to support a conviction. In *United States v. Hernandez,* 896 F.2d 513 (11th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990), we explained:

> Essentially, the government's case against Giral consists of Giral's presence in Aquino's car and at the trunk when Aquino delivered the package to Garcia, Giral's walking away after catching Garcia's eye, Giral's talking to a dead phone, and Giral's prior conviction of cocaine possession. Yet

---

* The majority focuses on the sufficiency of the evidence supporting Price's conspiracy conviction, not her conviction for possessing crack cocaine with the intent to distribute it. For that reason, my focus is on the insufficiency of the evidence to support the conspiracy conviction. However, because no evidence indicates any link between Price and the crack cocaine in this case,

when considering the possession counts, the jury must have attributed the crack cocaine to Price as a result of her presumed involvement with the drug conspiracy. Because there is insufficient evidence to find that she participated in the conspiracy, Price's conviction for possession with intent to distribute crack cocaine should be reversed as well.

Giral's mere association with Aquino or presence at the transaction does not prove that he was a part of the conspiracy....

Viewing the facts in the light most favorable to the government, we can surmise that Giral's association with Aquino may have been criminal, that Giral's presence at the scene of the crime could have been because of his involvement in the conspiracy, that Giral's abrupt departure might have occurred because he caught on to Garcia, was guilty and hoped to avoid arrest, and that Giral's intent in this case could have been identical to his intent in the narcotics crime for which he was convicted in 1985. We cannot find, however, that the government proved beyond a reasonable doubt that Giral was a member of this particular conspiracy to sell a kilogram or two of cocaine to Garcia.

*Id.* at 519–20 (citations omitted). Here, the government does not claim that in addition to being present Price engaged in any suspicious activity—such as talking into a dead phone—and the government presented no evidence to link Price to previous drug crimes.

More recently, in *Perez–Tosta,* we reversed the conviction of a defendant who had been present at two separate events linked to a drug conspiracy. On one occasion, the defendant not only was present but also produced the keys, registration, and insurance binder for a truck when two co-conspirators met to transfer trucks with concealed compartments and to discuss details of a cocaine transfer. *Perez–Tosta,* 36 F.3d at 1558. Later, the defendant was present in a car with the two co-conspirators as one drove the car "erratically" and as the two co-conspirators conducted "countersurveillance." *Id.* We concluded the following:

[A] reasonable jury could not ignore the doubts raised by the possibility that [the defendant] was an unwitting dupe in his sole action that furthered the conspiracy. Furthermore, in the absence of any evidence that [the defendant] himself was on the lookout, a reasonable jury could not infer from [his] mere presence in [the co-conspirator's] rental car that [the defendant] was knowingly engaged in counter-surveillance in furtherance of the conspiracy.

*Id.* at 1559 (citation omitted). The evidence underlying Price's conviction is even more tenuous than that in *Perez–Tosta,* because no evidence demonstrates that Price did *anything* which had the effect of furthering the conspiracy. *See also United States v. Villegas,* 911 F.2d 623, 628–31 (11th Cir.1990) (rejecting government argument that defendant's countersurveillance showed knowing participation in conspiracy), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991).

The mere presence rule is not a loophole or technicality designed to benefit drug conspirators and other criminals, but instead serves to protect cherished freedoms such as our right to be present in public places and to associate with whomever we please without fear of prosecution and punishment. Inroads into the rule, however well intentioned, may ultimately threaten those freedoms. Of course, no one has the right to be present anywhere for the purpose of facilitating a crime or to associate with others for criminal purposes. But the law has functioned, and should continue to function, to require that the government not only establish, but prove beyond a reasonable doubt, that the presence and association were for a criminal purpose. That is what the mere presence rule is about.

It is true that in this case Price did not affirmatively act to thwart the conspiracy or prevent the crime. The record reflects that Price, who was eight months pregnant, did not flee from the car, nor did she alert authorities that a drug transaction was occurring. However, she was not charged with misprision of a felony, but with drug crimes. She was convicted despite the insufficiency of the evidence to prove that she was guilty. What we said in *Hernandez* is equally applicable to this case: we can surmise that Price's association with Reese and Towns may have been criminal, and that Price's presence at the scene of two drug transactions may have been because of involvement in a conspiracy; but no reasonable factfinder could conclude that the government proved that beyond a reasonable doubt.

As a society we have given much to the war on drugs, but one thing we should not sacrifice is the fundamental constitutional principle that no man or woman may be convicted of a crime except upon proof beyond a reasonable doubt.

