[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13553
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00048-JES-MRM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TITUS LAMAR BELLOT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 5, 2017)

Before HULL, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, the Defendant, Titus Lamar Bellot, appeals his conviction for conspiracy to possess with intent to distribute methylone and his 60-month, below-guidelines sentence.  Upon review of the record and the parties' briefs, we affirm.

## I.     BACKGROUND

In April 2014, a federal Customers Enforcement officer in New York intercepted a package containing a little over one kilogram of methylone.  The package was sent from China and was addressed to "Deen Perkins"[1] at an address in Lehigh Acres, Florida.  The officer seized the methylone and sent the package to Homeland Security Investigations ("HSI") in Fort Myers, Florida.  HSI agents arranged for a controlled delivery of the package to the address in Lehigh Acres.

Meanwhile, on April 23, 2014, Defendant Bellot and Deena Williams exchanged text messages discussing the delivery of a package to her home.  Bellot told Williams: "Don't forget [you] gotta sign for the package I'll be to get later."  Williams responded, "I will not sign for no package not my John Handcock! [sic]"  She also told Bellot: "Do not have no more packages coming to my address. Have your mail going to your address[.]  [Y]ou is not going to have me fucked up."  Bellot told her, "Lol I wouldn't get [you] fucked up sis."  Bellot and Williams also

---

[1]Bellot was indicted with Deena Williams, whose maiden name was Deena Perkins.

2

discussed how the package would be arriving, and Bellot confirmed that the package would come via regular mail.

On April 25, 2014, a postal inspector posing as a mail carrier delivered the package to Williams's home, and she accepted the package from him. Soon after, a tracking device that HSI agents had installed notified the agents that the package had been opened. Agents entered the house and found the package opened and the bag of drugs on the kitchen counter. While the agents were there, Williams answered a phone call from her husband, who told her, "[m]ake sure he pays you," and "[c]all me if it doesn't go right." Williams also received a phone call from Bellot, but she did not answer. At the agents' direction, Williams called Bellot back and told him the package was at her house. Bellot said he would be there in five minutes. The agents hid to await Bellot's arrival.

Once Bellot arrived and he and Williams entered the house, Bellot "ran [] very quickly" toward the bag of drugs on the counter. The agents arrested Bellot and found $1,000 in cash in his pocket. Officers searched the BMW that Bellot drove to Williams's house and found an additional $1,100. Bellot also had his cell phone in his pocket, which he had used earlier to text and call Williams.

The day of his arrest, Bellot called his girlfriend from jail. Bellot said Williams had opened the package: "The bitch opened that shit. The bitch so stupid. She the only reason we in this shit. Her dumb ass." Bellot said he was

3

"still acting like" he didn't know what was in the package. Bellot asked his girlfriend to "cover [his] tracks" by wiping his cell phone and sending a pair of sneakers to Williams's house so it would look like he was just picking up shoes instead of drugs.

At trial, Bellot unsuccessfully moved for a judgment of acquittal, arguing that the evidence did not show an agreement between himself and Williams. The jury convicted him. The district court sentenced Bellot to 60 months' imprisonment.

## II.    DISCUSSION

### A.    Claims of Trial Error

On appeal, Defendant Bellot argues that the district court erred in denying his motion for judgment of acquittal because the government presented no evidence of an agreement between him and Williams, no evidence from which the jury could have inferred any agreement, and no evidence that he and Williams agreed on the object of the conspiracy. Bellot submits his mere presence at the house is insufficient to prove a conspiracy.

We review de novo the denial of a motion for judgment of acquittal and the sufficiency of the evidence. United States v. Hunt, 526 F.3d 739, 744 (11th Cir. 2008). In determining whether the evidence presented was sufficient, we view the evidence in the light most favorable to, and draw all reasonable inferences in favor

4

of, the government.  Id.  We will affirm the conviction "if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 745 (quotation and internal quotation marks omitted).

It is unlawful for any person to knowingly or intentionally possess with intent to manufacture, distribute, or dispense a controlled substance.  21 U.S.C. § 841(a)(1).  To prove participation in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, the government must prove that a conspiracy existed and that the defendant knowingly and voluntarily joined the conspiracy.  United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).  To obtain a conspiracy conviction, the government must prove: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means.  Id.  The government need not demonstrate that a formal agreement exists; rather, it may demonstrate a meeting of the minds to commit an unlawful act by circumstantial evidence. United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998).  This circumstantial evidence may include inferences from the alleged participants' conduct.  Garcia, 405 F.3d at 1270.

Here, the district court did not err in denying Bellot's motion for a judgment of acquittal because there was abundant circumstantial evidence that he conspired

with Williams to possess with intent to distribute methylone. Specifically, the government presented evidence of the text messages between Bellot and Williams prior to the package being delivered (including his inquiries as to when it would be delivered and her reluctance to accept delivery), his possession of $1,000 cash when retrieving the methylone, and his attempts to cover up his involvement in the conspiracy. This evidence, viewed in the light most favorable to the prosecution, amply supports a jury finding beyond a reasonable doubt that Bellot agreed to the conspiracy with Williams. See Hunt, 526 F.3d at 745. And while Bellot is correct that something more than "mere presence" is required to sustain a conviction for conspiracy to possess and distribute drugs, the government here showed not only Bellot's presence at Williams's house, but also his knowing participation in the drug scheme. See United States v. Lyons, 53 F.3d 1198, 1201 (11th Cir. 1995). Accordingly, the district court did not err in denying Bellot's motion for a judgment of acquittal.

Bellot's other arguments on appeal merit only brief mention. He argues that (1) the district court erred in allowing a special agent from the Department of Homeland Security to testify about typical methylone dosage, prices, and the estimated street value of the methylone at issue; and (2) the government's statements during closing arguments improperly shifted the burden of proof to him.

Because Bellot did not object to either of these alleged errors before the district court, we will review them only for plain error.  United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007) (explaining that where a defendant fails to preserve his challenge to an evidentiary ruling before the district court, this Court reviews only for plain error).  Under that standard, the defendant must show (1) an error (2) that was plain and (3) that affected his substantial rights.  Id. at 1343 n.7.

The district court did not plainly err in admitting the special agent's testimony because it is unclear, under this Court's precedent, whether that testimony fell within the proper bounds of lay testimony.  See United States v. Pantle, 637 F.3d 1172, 1174-75 (11th Cir. 2011) (holding that an error is plain if it is clear from either the plain meaning of a statute or constitutional provision, or from a holding of the Supreme Court or this Court); Fed. R. Evid. 701 (explaining the circumstances under which lay witnesses may give opinion testimony).  Indeed, this testimony likely falls within the bounds of Rule 701 because it was based upon the special agent's particularized knowledge of methylone sales and use, which was garnered through his experience in the field.  See United States v. Hill, 643 F.3d 807, 841 (11th Cir. 2011) (concluding that Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their personal experiences).  In the absence of clear precedent showing the special

agent's testimony was impermissible as a lay opinion, Bellot cannot show plain error. Pantle, 637 F.3d at 1174-75.

The government's statements during rebuttal closing argument—that Bellot had the same subpoena power as the government—do not constitute reversible error, either. Any potential prejudice regarding this alleged burden-shifting was diminished by the prosecutor's statement that the burden of proof is the government's and the district court's explicit instructions regarding the burden of proof in the jury charge. See United States v. Hernandez, 145 F.3d 1433, 1439 (11th Cir. 1998) (concluding that "it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government"); see also Hill, 643 F.3d at 829 (noting that this Court generally presumes that jurors follow the instructions given to them by the district court). Bellot has also failed to show that the comments affected his substantial rights or the fairness of the proceedings because they were not extensive, they did not tend to prejudice him, and there was strong proof establishing Bellot's guilt. See United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009) (setting forth the factors this Court uses to determine whether a prosecutor's conduct had a reasonable probability of changing a trial's outcome); Edouard, 485 F.3d at 1343.

8

## B.    Claims of Sentencing Error

At sentencing, Bellot requested that the district court reduce his criminal history category from a Category III to a Category I, arguing that a Category III designation significantly over-represented the seriousness of his criminal history. The district court denied this request, finding that:

> Under Section 4A1.3 of the sentencing guidelines, the [c]ourt clearly has the authority to depart downward if the Defendant's criminal history is significantly over-represented.  We've just gone through the felony and misdemeanor convictions.  I don't need to repeat that.
>
> At Criminal History Category III, the [c]ourt finds that [Bellot] is properly[] scored and that a Criminal History Category III does not significantly over-represent [Bellot's] criminal record.  Therefore, the request under Section 4A1.3 will be denied.[2]

Before pronouncing the sentence, the district court stated that it had considered all of the factors listed in 18 U.S.C. § 3553.  The district court specifically mentioned Bellot's criminal history, noted Bellot's "involvement in this case" and his lawyer's belief that Bellot had "some potential," and admonished Bellot to use his time in prison well as he would still be a young man when released.  The district court then imposed a 60-month sentence, 3 months below the bottom of the advisory guidelines range of 63 to 78 months.

---

[2]If reliable information indicates that a defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.  U.S.S.G. § 4A1.3(b)(1).

9

On appeal, Bellot argues that his 60-month, below-guidelines sentence is procedurally and substantively unreasonable.[3]  He claims that his sentence was procedurally unreasonable because (1) the district court's statement that it had "the authority to depart downward if the Defendant's criminal history is significantly over-represented" reflects that the district court was treating the Sentencing Guidelines as presumptively reasonable; and (2) the district court failed to effectively consider the § 3553(a) factors.  Bellot also argues that his sentence is substantively unreasonable because the district court gave too much weight to his criminal history and not enough weight to his youthful age.

The sentence the district court imposes must be both procedurally and substantively reasonable.  Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  A district court commits a procedural error if it improperly calculates the guidelines range, treats the guidelines as mandatory, fails to consider the relevant § 3553(a) factors, chooses a sentence based on clearly erroneous facts, or fails to explain the given sentence.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).

A sentencing court may not presume that a sentence within the applicable guidelines range is reasonable.  Nelson v. United States, 555 U.S. 350, 352, 129 S.

_____

[3]While the parties agree that the standard of review for Bellot's substantive-reasonableness claim is abuse of discretion, they disagree as to whether we must review his procedural-reasonableness claim for abuse of discretion or plain error.  Because Bellot's arguments fail regardless of the standard of review, we need not decide which is the correct standard in this case.

10

Ct. 890, 892 (2009).   Additionally, although the district court must consider the § 3553(a) sentencing factors and provide "some explanation for the sentence," it is not required "to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors."   United States v. Docampo, 573 F.3d 1091, 1100 (11th Cir. 2009) (quotation omitted).   The Supreme Court has held that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."   Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007).

We examine whether the sentence was substantively reasonable in light of the totality of the circumstances, including the extent of any variance.  Gall, 552 U.S. at 51, 128 S. Ct. at 597.  The party challenging the sentence has the burden of demonstrating that a sentence is unreasonable in light of the record and the factors outlined in 18 U.S.C. § 3553(a).  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).  The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public from the defendant's future criminal conduct, and provide the defendant with needed training or medical care.  See 18 U.S.C. § 3553(a)(2).  The

court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  See § 3553(a)(1), (3)-(7).  The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

Here, the district court's statement that it "clearly [had] the authority to depart downward" if Bellot's criminal history was over-represented did not suggest that it presumed that Bellot's guidelines sentence was reasonable—rather, it was merely a restatement of the standard for downward departure provided in U.S.S.G. § 4A1.3(b)(1).  Further, the district court determined the applicable guidelines range and stated that it had considered all of the § 3553(a) factors.  The district court's downward variance to impose a sentence that was three months below the guidelines range minimum also suggests that it did not presume a guidelines sentence, even at the low end, was reasonable.

Additionally, Bellot has failed to meet his burden to show that his sentence is substantively unreasonable in light of the record and the § 3553(a) factors.  Tome, 611 F.3d at 1378.  The court explicitly stated that it had considered the

§ 3553(a) factors in sentencing Bellot, whether it had discussed them or not.  The court examined Bellot's criminal history, personal characteristics, and the nature and circumstances of his offense, which were all permissible factors for the court to consider in arriving at Bellot's sentence.  See 18 U.S.C. § 3553(a)(2).  Even if the court gave significant weight to Bellot's criminal history, giving greater weight to a defendant's history and characteristics than to any other § 3553(a) factor is not an abuse of discretion, especially where, as here, the defendant had a criminal history spanning many years.  See Clay, 483 F.3d at 743.

We conclude that Bellot has not demonstrated that his sentence was procedurally or substantively unreasonable.  For the foregoing reasons, we affirm Bellot's conviction and 60-month sentence.

**AFFIRMED.**