[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-12378
Non-Argument Calendar

————————————————

D.C. Docket No. 1:16-cr-20771-MGC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVEN LEE ANTHONY,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(July 25, 2018)

Before MARCUS, MARTIN and HULL, Circuit Judges.

PER CURIAM:

Steven Anthony appeals his conviction and sentence for conspiracy to possess with intent to distribute heroin within 1000 feet of a public housing facility, in violation of 21 U.S.C. §§ 846 and 860(a). On appeal, Anthony argues

that: (1) a mistrial was warranted because the government committed prosecutorial misconduct in its opening statement by referencing a "show-up" identification that had not been disclosed during discovery, and the court erred by allowing the introduction of photos taken immediately after the show-up identification; (2) the trial evidence was insufficient to support his conviction; and (3) he was improperly sentenced as a career offender.  After careful review, we affirm.

We typically review a prosecutorial misconduct claim de novo because it is a mixed question of law and fact.  United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006).  But if a defendant fails to object to prosecutorial misconduct by the government based upon comments made during opening or closing statements, we review the claim for plain error.  United States v. Frank, 599 F.3d 1221, 1237-38 (11th Cir. 2010).  To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights.  United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007).  If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.  Unless the explicit language of a statute or rule resolves an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.  United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).  The doctrine of invited error is implicated when a party induces or

invites the district court into making an error.  United States v. Harris, 443 F.3d 822, 823 (11th Cir. 2006).  Where a party invites error, we are precluded from reviewing that error on appeal.  Id. at 823-24.

Similarly, we normally review challenges to the sufficiency of the evidence de novo.  See United States v. Zitron, 810 F.3d 1253, 1260 (11th Cir. 2016).  However, unpreserved objections to the sufficiency of the evidence are reviewed for plain error.  Id.  Even where a defendant moves for judgment of acquittal based on sufficiency of the evidence, we review specific arguments as to insufficiency that are raised for the first time on appeal for plain error if the defendant did not clearly object on that specific basis.  See id.

Finally, we review de novo whether a defendant's prior conviction qualifies as a crime of violence under the Sentencing Guidelines.  United States v. Palomino Garcia, 606 F.3d 1317, 1326 (11th Cir. 2010).

First, we are unpersuaded by Anthony's claims that the government committed prosecutorial misconduct in its opening statement and that the district court erred by admitting photos of Anthony.  Reversal on the basis of prosecutorial misconduct requires that the misconduct be "so pronounced and persistent that it permeates the entire atmosphere of the trial."  United States v. Weinstein, 762 F.2d 1522, 1542 (11th Cir. 1985) (quotation omitted).  Thus, to establish prosecutorial misconduct, the remarks (1) must be improper, and (2) must prejudicially affect the

3

substantial rights of the defendant.  Eckhardt, 466 F.3d at 947.  A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different.  Id.

The relevant background is this.  In a pre-trial discovery filing, the government advised Anthony that it had "[n]o lineup, show up, photo spread, or similar identification proceeding[]" to disclose.  A "show-up" is an identification procedure where an officer presents a witness with a suspect and asks him whether that suspect is the perpetrator of the crime at issue.  As it turns out, a show-up identification had occurred in the case when Detective Stanley Paul-Noel had taken Detective Walter Singer, who had conducted an undercover drug deal with Anthony and his codefendant Willie Hundley, back to the scene of the drug deal to identify the men who had sold him heroin.  Photographs were taken of Anthony immediately after the show-up identification, and he was arrested at a later time.

During the government's opening statement in Anthony's trial, the prosecutor told the jury that Detective Singer had identified Anthony and Hundley as the people who had sold him drugs.  Anthony objected that the government's reference to this "show-up" identification revealed that the government had made a discovery violation, and, after equivocating as to his preferred remedy, he ultimately requested that the court exclude evidence of the show-up identification. The court excluded the evidence.  Additionally, Anthony objected to the

4

introduction -- during Detective Singer's testimony -- of photos of him at the time of the show-up that were taken by Detective Paul-Noel, but he suggested that the photos could be introduced during Detective Paul-Noel's testimony, which is ultimately what occurred. In its instructions to the jury, the court told the jury to consider only the evidence that was admitted at trial, and that the lawyer's statements were not evidence and were not binding on them.

For starters, because Anthony explicitly objected to the government's comments regarding the show-up as a discovery violation rather than as prosecutorial misconduct, we review his prosecutorial misconduct claim for plain error, and we can find none. See Frank, 599 F.3d at 1237-38. As the record reveals, Detective Singer testified at length about conducting a drug deal with Anthony and his codefendant Hundley, and Singer identified Anthony in the courtroom as the person with whom he transacted. Also, the district court instructed the jury that statements by the lawyers were not evidence. On this record, Anthony has not demonstrated that the outcome of his trial would have been different but for the prosecutor's remarks, and, therefore, has failed to show plain error from any prosecutorial misconduct. See Eckhardt, 466 F.3d at 947.

Further, Anthony invited any potential error created by the district court's decision to exclude the show-up evidence. See Harris, 443 F.3d at 823. After a prolonged discussion with the court, during which Anthony vacillated between

5

requesting a mistrial and exclusion of the evidence, Anthony ultimately indicated that exclusion was the "short answer." Anthony continued, "That's the easiest. I just don't know . . . ." On this record, it was reasonable for the court to interpret Anthony's requested remedy to be exclusion of the evidence rather than a mistrial. Because Anthony induced the district court into deciding in favor of exclusion and against a mistrial, we are precluded from reviewing any potential error created by that decision on appeal. See Harris, 443 F.3d at 823-24.

Anthony also invited any error that occurred through the introduction of the photos taken by Detective Paul-Noel after the show-up identification. As the record reveals, Anthony expressly told the court that if the government wished to introduce those photos, it could do so through the testimony of the detective who took the photos, Detective Paul-Noel. Later, when the government sought to introduce the photos during Detective Paul-Noel's testimony -- as Anthony recommended -- he objected to their introduction on the basis that the photos also included printed information. But once the government explained that the information only related to the time, date, and location of the photos, Anthony withdrew his objection to the photos and indicated that he was satisfied. Then, when Anthony objected to the introduction of the photos during Detective Singer's testimony or any identification by him of the photos, the court sustained his objection at that time. This record makes clear that Anthony invited the court to

6

allow the photos to be introduced into evidence during Detective Paul-Noel's testimony, and, therefore, Anthony is precluded from arguing on appeal that the court erred by doing just that. See Harris, 443 F.3d at 823-24.

Next, we are unconvinced by Anthony's claim that the trial evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence, we view the record in the light most favorable to the government, resolving all reasonable inferences in favor of the verdict. United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010). A defendant's conviction will be sustained as long as there is a reasonable basis in the record for it. Id. Whether the evidence is direct or circumstantial, we accept all reasonable inferences that tend to support the government's case. United States v. Williams, 390 F.3d 1319, 1324 (11th Cir. 2004). The evidence need not exclude every reasonable hypothesis of innocence in order for a reasonable jury to find guilt beyond a reasonable doubt. United States v. Cruz-Valdez, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc). Thus, the jury is free to choose among alternative, reasonable interpretations of the evidence. Id.

To sustain a conviction for conspiracy to possess with intent to distribute a controlled substance under § 846, the government must prove that: (1) an agreement existed between two or more people to possess with intent to distribute the drugs; (2) that the defendant at issue knew of the conspiratorial goal; and (3) that he knowingly joined or participated in the illegal venture. See United States v.

Brown, 587 F.3d 1082, 1089 (11th Cir. 2009). Close association with a co-conspirator or mere presence at the illegal sale of drugs is, by itself, insufficient evidence to support a conviction for conspiracy to possess and distribute drugs. See United States v. Lyons, 53 F.3d 1198, 1201 (11th Cir. 1995). Nonetheless, the inference of participation from presence and association with conspirators is "a material and probative factor that the jury may consider in reaching its verdict." Id. Further, culpable participation need not be great, since guilt may exist even when the defendant plays only a minor role. Id.

It is unlawful to possess, with the intent to distribute, a controlled substance within 1000 feet of a housing facility owned by a public housing authority. 21 U.S.C. § 860(a). Direct or circumstantial evidence can prove intent, knowledge, and possession. United States v. Poole, 878 F.2d 1389, 1391-92 (11th Cir. 1989).

As an initial matter, Anthony's motion for judgment of acquittal as to Count 1 only raised the specific objections that there was insufficient evidence as to an "agreement between Mr. Anthony and anybody else involved in this case, any other witnesses involved in this case, and that no trier of fact could find Mr. Anthony guilty." Thus, we review de novo his claim that there was insufficient evidence of an agreement, but review for plain error his claim that there was insufficient evidence that the drug deal took place within 1000 feet of public housing or that he knowingly agreed to the deal. See Zitron, 810 F.3d at 1260.

8

Viewed in the light most favorable to the government, the trial evidence was sufficient to support the finding of a knowing agreement between Anthony and Hundley to possess with intent to distribute heroin.  See Farley, 607 F.3d at 1333.  Detective Singer testified that Anthony asked him what he wanted and needed, to which Detective Singer replied, "boy" -- slang for heroin.  Detective Singer then handed 40 dollars to Anthony before Anthony handed Hundley the money and told him to "go get him the boy."  As Hundley retrieved the heroin, Anthony told Detective Singer to wait down the street, and Hundley later gave four plastic baggies with suspected heroin to Detective Singer.  Further, Detective Singer identified Anthony in the courtroom as the person with whom he had transacted.

Based on this testimony, there is a reasonable basis for the jury to conclude that Anthony knowingly entered into an agreement to possess with intent to distribute heroin.  See Farley, 607 F.3d at 1333.  Even if the evidence did not exclude every reasonable hypothesis of Anthony's innocence, the jury was free to choose among reasonable interpretations of the evidence.  See Cruz-Valdez, 773 F.2d at 1545.  One reasonable interpretation was that Anthony knew about the goal of the conspiracy -- to possess with intent to distribute heroin -- and knowingly participated in the venture by asking Detective Singer what he wanted, telling Hundley to retrieve the heroin, and telling Detective Singer where to await Hundley's delivery.  See Brown, 587 F.3d at 1089.  Thus, the evidence supported

9

an inference that Anthony's role in the drug transaction went beyond his mere presence or association, and that, even if he did not know every detail of how Hundley would distribute the heroin, he played at least a minor role in advancing the conspiracy.  See Lyons, 53 F.3d at 1201.

Moreover, Anthony has not shown that the sufficiency of the evidence about whether the drug transaction occurred within 1000 feet of a public housing facility amounted to plain error.  See Zitron, 810 F.3d at 1260.  Detective Freddy Quintero testified that he measured the distance between the part of the intersection of Fifth Avenue and Eighth Street where the drug transaction occurred and Culmer Place, a nearby housing project on the northwest corner of the intersection.  Detective Quintero said that the beginning of the Culmer Place property was 196 feet from where the drug deal occurred.  The front entrance of Culmer Place was 411 feet from where the drug deal occurred.  Detective Quintero added that he observed signs in Culmer Place stating "Miami-Dade Housing Authority" and "HUD."

On this record, there is a reasonable basis for the jury to conclude that the drug transaction occurred within 1000 feet of Culmer Place, a public housing facility.  See Farley, 607 F.3d at 1333.  As for Anthony's claim that the government did not prove that he knew or intended that the drug deal would take place within 1000 feet of a public housing facility, he does not point to any binding statute, rule, or precedent indicating that the government is required to prove

knowledge or intent as to the 1000-foot boundary. Without any definitive authority as to this issue, there can be no plain error. See Lejarde-Rada, 319 F.3d at 1291. As for Anthony's citation to pattern jury instructions, those instructions are not binding authority that directly resolve the question. Accordingly, Anthony has not shown that the court erred in denying his motions for judgment of acquittal.

Finally, we find no merit to Anthony's claim that he was improperly sentenced as a career offender because his prior Florida conviction for felony battery under Fla. Stat. § 784.041(1) does not qualify as a crime of violence under the elements clause in U.S.S.G. § 4B1.2. Anthony concedes that we ruled to the contrary in United States v. Vail-Bailon, 868 F.3d 1293 (11th Cir. 2017) (en banc), cert. denied, No. 17-7151 (U.S. June 11, 2018), and he says that he only raises the issue on appeal in order to preserve it for further review.

Under U.S.S.G. § 4B1.1, a defendant's offense level may be increased if he is a deemed to be a career offender. A defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Id. § 4B1.1(a). The term "crime of violence" is defined in the elements clause of § 4B1.2 to include an offense that has as an element the use, attempted use, or threatened use of physical force against the person of another. Id. § 4B1.2(a).

11

Under Florida law, a person commits felony battery if he: (a) actually and intentionally touches or strikes another person against the will of the other; and (b) causes great bodily harm, permanent disability, or permanent disfigurement.  Fla. Stat. § 784.041(1).  In Vail-Bailon, we applied the categorical approach and held that felony battery under Fla. Stat. § 784.041(1) categorically qualifies as a crime of violence under the elements clause of the operative version of U.S.S.G. § 2L1.2, which provided for a 16-level enhancement if a defendant convicted of illegal re-entry was previously deported following a conviction for a crime of violence.  See Vail-Bailon, 868 F.3d at 1296-98, 1308.  We reasoned that § 784.041(1) has as an element the use, attempted use, or threatened use of physical force against the person of another.  Id.  We also noted that the elements clause of § 2L1.2 mirrors the elements clause of § 4B1.2(a).  See id. at 1297 & n.5.

Here, as Anthony concedes, his argument as to Fla. Stat. § 784.041(1) is foreclosed by our binding precedent.  We held in Vail-Bailon that felony battery under Fla. Stat. § 784.041(1) categorically qualifies as a crime of violence under the elements clause of the operative version of § 2L1.2, which mirrors the elements clause of § 4B1.2(a).  See id. at 1296-98, 1297 n.5, 1308; see also Palomino Garcia, 606 F.3d at 1328-29 (noting that we've employed the same analytical framework in determining whether an offense was a crime of violence under both § 4B1.2 and § 2L1.2).  Thus, based on our binding precedent, we reject Anthony's

claim that Florida felony battery does not qualify as a crime of violence under the elements clause of § 4B1.2(a).

**AFFIRMED**.